1  Devin A. McRae, State Bar Number 223239
     dmcrae@earlysullivan.com
2  Peter Scott, State Bar Number 247786
     pscott@earlysullivan.com
3  EARLY SULLIVAN WRIGHT
     GIZER & McRAE LLP
4  6420 Wilshire Boulevard, 17th Floor
   Los Angeles, California 90048
5  Telephone: (323) 301-4660
   Facsimile: (323) 301-4676
6
7  Attorneys for Plaintiff
   CATHERINE CORCORAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CATHERINE CORCORAN, an individual, | Case No. 2:25-cv-10284 |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| DARK AGE CINEMA, LLC, a New York limited liability company; ART THE CLOWN, LLC, a New Jersey limited liability company; FUZZ ON THE LENS PRODUCTIONS, LLC, a New York limited liability company; PHIL FALCONE, an individual; DAMIEN LEONE, an individual; and DOES 1-10, inclusive, | |
| Defendants. | |



5815916.1

**COMPLAINT**

## I. INTRODUCTION

1. This case presents an all-too-common story of low budget film producers taking advantage of a young actress through fraud, sexual harassment and, ultimately, betrayal.

2. The *Terrifier* motion picture series is one of the most popular and profitable independent horror film series produced in the last 25 years. With an initial budget of only $35,000, the film series has spawned three films and has unexpectedly gone on to earn over $100 million at the box office alone, with much more earned through streaming and merchandise.

3. Plaintiff Catherine Corcoran was cast in the original *Terrifier* film and starred in the series' most iconic and enduring scene, which required her to be hung upside down by her ankles for over ten hours in below freezing temperatures in a condemned building. To accommodate the film's ultra-low budget, Corcoran agreed to act in the film for an extremely low up front per diem rate – barely more than minimum wage, but with an agreement that she would receive 1% of the profits from and/or related to the *Terrifier* motion picture and any future *Terrifier* motion pictures as well as 1% of the profits from any *Terrifier* related merchandise. Corcoran's profit share included not only profits generated strictly from the *Terrifier* films and merchandise, but also profits generated from any exploitation of the intellectual property underlying *Terrifier*, such as books, video games, *Terrifier* themed events and any other manner of licensing or use of the *Terrifier* intellectual property.

4. The producers of the film paid Corcoran her royalties for a brief period of time several years after the release of the film, but when the film series' success started to grow exponentially and exceeded the producer's original expectations, the royalty payments became more and more sporadic and dwindled to amounts nowhere near commensurate with the revenues generated.

5. Corcoran's acting in *Terrifier* established the foundational elements in the lore of the series. Corcoran's willingness to work under extremely difficult and

dangerous conditions for essentially minimum wage with the expectation that she would receive her just compensation from the profits of the film allowed *Terrifier* to get made. Were it not for Corcoran's willingness to take a risk on this production and receive her compensation on the back-end, the series would not exist as it could not have been made on a shoe-string budget otherwise. However, when it came time to pay what was owed, the producers chose to cheat her. This injustice must be rectified.

## II.   PARTIES

6.   Plaintiff Catherine Corcoran is an individual and at all relevant times was a citizen of the State of California residing in the County of Los Angeles.

7.   Defendant Phil Falcone is an individual and at all relevant times was a citizen of the State of New Jersey residing in the County of Monmouth.

8.   Defendant Damien Leone is an individual and at all relevant times was a citizen of the State of New York residing in the County of New York.

9.   Defendant Dark Age Cinema, LLC is a New York limited liability company with its principal place of business in the County of New York.

10.   Defendant Art the Clown, LLC is a New Jersey limited liability company with its principal place of business in the County of Monmouth.

11.   Defendant Fuzz on the Lens Productions, LLC is a New York limited liability company with its principal place of business in the County of New York.

## III.   JURISDICTION AND VENUE

12.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the State of California and diversity exists because all named Defendants are citizens of New York. The amount in controversy exceeds $75,000. This case involves entitles with sufficient contacts with California to make proper the exercise of personal jurisdiction over them.

13.   Venue is proper in this Court. A substantial part of the acts or omissions giving rise to the claims alleged occurred in Los Angeles County, California.

## IV. ALLEGATIONS

14. In or around the summer of 2015, Defendant Leone undertook efforts to develop a feature-length slasher horror film involving several lead female ingénues and the antagonist character Art the Clown. The new feature-length film, under the working title *Terrifier* was to be developed on an extremely low budget of only approximately $35,000, which was funded by Defendant Falcone. The film was jointly produced by Leone's production company, Dark Age Cinema and Falcone.

15. Corcoran was cast in the role of Dawn, a character with the most dangerous, but also one of the most iconic and enduring scenes in the entire film series, wherein she was to be hung upside down and shackled by her feet, without any real safety measures in place, and sawed in half with a hacksaw.

16. To accommodate the production of the film, Corcoran, who was the only established talent signed on to the film at the time, agreed to work for an *extremely* low up front daily rate and to take a percentage of the back-end profits of the film series. On July 8, 2015, Dark Age Cinema and Corcoran entered into a Screen Actors Guild Employment of Performer for Ultra Low Budget Film form agreement for Corcoran's employment in the role of Dawn that set her daily rate at $100 (the "SAG Agreement"). A true and correct copy of the SAG Agreement is attached hereto as **Exhibit 1**. Upon information and belief Dark Age Cinema has the fully executed version of the document within its possession, custody and control.

17. At the time the SAG Agreement was executed,[1] the Screen Actors Guild Collective Bargaining Agreement required producers to obtain the informed written consent from an actress before filming any scenes involving nudity and/or simulated sexual activity. The written consent must include a general description of the extent

---

[1] These protections were strengthened and further bolstered with, among other things, even more stringent consent requirements through a major overhaul of the nudity provisions of the Screen Actors Guild Collective Bargaining Agreement in 2020 and 2023.



5815916.1

4

**COMPLAINT**

of the nudity and type of physical contact required in the scene. Without such informed written consent, any film or still images involving nudity and/or simulated sexual activity are *de facto* and *de jure* deemed to have been obtained without the actress's consent. Plaintiff's informed written consent for nudity or simulated sexual contact in connection with the film was never obtained by any of Dark Age Cinema, Falcone, Leone or any other Defendants.

18. Concurrently with the SAG Agreement, on July 8, 2015, Dark Age Cinema, entered into a written "Mutual Non-Disclosure Agreement" with Corcoran wherein, in exchange for Corcoran's agreement not to disclose information concerning the nature of the film and to further compensate her for her work on the film and agreement to take an extremely low up front daily rate, Dark Age Cinema agreed that Corcoran "will receive 1% of profits from 'Terrifier.'" This written Mutual Non-Disclosure Agreement was prepared by Dark Age Cinema and sent to Corcoran for signature. Corcoran signed the document as sent to her by Dark Age Cinema with no changes on July 8, 2015, and sent it back to Dark Age Cinema. Upon information and belief, Dark Age Cinema counter-signed the document and has the fully executed document within its possession, custody and control. A true and correct copy of the Mutual Non-Disclosure Agreement received and signed by Corcoran is attached hereto as **Exhibit 2**.

19. Principal shooting took place through the fall and winter of 2015. Corcoran and her co-stars worked through long, grueling overnight shoots under extreme conditions. The low-budget nature of the production carried over into the working conditions on set, including long hours in below freezing temperatures in condemned buildings, all without heat and some without bathrooms. The so-called "practical effects" that made *Terrifier* so compelling on screen involved the director placing prosthetics with actual rat feces on Corcoran's skin and real duct tape over her mouth. Further, when creating the silicone mold for Corcoran's body cast, the producers of the film required Corcoran to lie nude on a piece of plywood while she

was covered with a quick-drying liquid silicone agent. However, the process was done incorrectly and the silicone dried and essentially glued Corcoran to the plywood, requiring a long, painful process to remove the dried silicone from her body. To make matters worse, Falcone took numerous still photographs of Corcoran's nude body while she was glued to the plywood sheet without her consent.

20. Corcoran's defining scene in the film involves her being suspended upside down by her ankles and sawed in half by the film's antagonist, Art the Clown. This scene called for Corcoran to be nude. Defendants never obtained Corcoran's informed written consent to film Corcoran nude in this scene as required by the SAG CBA in effect at the time. When Corcoran appeared on set to film the scene, she recognized that she was the only female on set. Falcone and Leone informed Corcoran that the scene was to be done with Corcoran fully nude. However, Corcoran insisted that she be permitted to at least wear underwear during the filming, to which Falcone and Leone ultimately acquiesced. However, she was still required by Falcone and Leone to perform the scene topless without having been provided with the informed written consent and disclosures required by her SAG Agreement.

21. During filming of the scene, to mitigate the pooling of blood in her head while suspended by her ankles, filming of the scene took place in 40-second increments for over ten hours, with a platform being intermittently placed underneath Corcoran and her nude body lifted by the men on set to bring her horizontal. This procedure was only done as a result of Corcoran's request and, had she not made this request, these safety measures would not have been taken. This procedure, however, never fully allowed the blood to properly recirculate and it simply pooled in her head each time she was again hung upside down. Filming of the scene took place in a condemned building in 20-degree weather. Corcoran was wrapped in a blanket in between takes, but overtime the blanket became so saturated with fake blood that it ceased providing any warmth. At the conclusion of filming the scene in the early morning hours of the following day, Corcoran was cursorily toweled down, given

back her bathrobe and winter coat and then placed on the Staten Island Ferry back to her apartment. During and for several days after filming the scene Corcoran felt ill. When she visited her doctor, she was told that she had suffered cranial swelling and eardrum damage as a result of being hung upside down for this length of time in these working conditions.

22. *Terrifier* premiered in October 2016 at the Telluride Horror Show Film Festival before opening the IFC Midnight's Scary Movie Showcase at Lincoln Center in July of 2017. While the film was an organic, sleeper-hit with audiences – including the sellout crowd at the Lincoln Center – it had yet to translate into any real financial success. The film was picked up for limited theatrical release on March 15 and 16, 2018 and was released shortly thereafter on DVD and Blu-ray on March 27, 2018. The film also began streaming on Netflix in the fall of 2018.

23. Corcoran had yet to receive any of her promised back-end royalties on the profits generated from the film. However, in light of the limited theatrical release and still underground nature of the film, she had no reason to suspect that these royalties were being concealed from her and simply assumed that no profits had yet been generated. At or around this time, Leone further agreed in writing to provide Corcoran with a share in 1% of all net sales generated from *Terrifier* related merchandise.

24. In 2019, Leone commenced writing a sequel to *Terrifier*, entitled *Terrifier 2*, and sought funding from private investors as well as through crowdfunding sources, although this time with a much larger anticipated budget of approximately $250,000. Due to the popularity of the first film, this crowdfunding goal was met in less than one week after going live. *Terrifier 2* was directed by Leone and produced by Dark Age Cinema and Fuzz on the Lens Productions.

25. Filming of *Terrifier 2* commenced in October 2019, but was put on hold during the COVID-19 pandemic and wrapped in July 2021. Although Corcoran does not act in the film, she is credited for a photographic cameo in the film as Dawn from

the original *Terrifier* and signed a Screen Actors Guild re-use agreement in connection with the film. Again, there was no SAG CBA informed written consent for nudity provided by Corcoran.

26. *Terrifier 2* had a much wider theatrical release, being released on October 6, 2022 in 886 theaters in the United States and grossing $400,000 on its opening day. It went on to debut to $805,000 and then made $1,000,000 the following weekend. The trade publications were taken aback by the film's success in light of its limited budget and lack of marketing. *Terrifier 2*'s run at the box office was extended to multiple weekends and it ended up grossing over $10,000,000 in its initial run in North America and an additional nearly $5,000,000 worldwide. The success of *Terrifier 2* generated renewed interest in the original *Terrifier*, which was re-released in theaters in 2023, grossing over $400,000.

27. The *Terrifier* films also became available on various streaming platforms including Netflix, Amazon Prime, Peacock, Screambox, Tubi and others and was also released on physical media including Blu Ray, DVD and VHS.

28. It was during this time period in December 2022 that Corcoran began to receive sporadic royalty payments from Dark Age Cinema and the Art the Clown. However, the Memo lines on the checks were cryptic as to exactly what the payment was for (e.g. "DIST T1," "Q1 EPIC" or just "Merchandise") and there was no accompanying accounting statement reflecting how the payment figure was derived. Corcoran was left to trust that Defendants were honoring their agreements to pay her the royalties that were owed. From Corcoran's perspective, the success of *Terrifier 2* and renewed interest in the original *Terrifier* seemed to correspond with the commencement of her royalty payments, so she did not have reason to suspect she was being cheated.

29. A third installment in the series, the aptly named *Terrifier 3*, had wide release on October 11, 2024. *Terrifier 3* was a major motion picture with a $2,000,000 budget and corresponding commercial expectations. It was directed again by Leone

and produced by Dark Age Cinema and Fuzz on the Lens Productions. The film grossed $90.3 million in domestic and international box office receipts and was released on multiple streaming platforms as well as distributed via DVD and Blu-ray. Capitalizing on the success of the franchise, *Terrifier* and *Terrifier 2* were also subsequently released to international box offices, generating additional revenues.

30. However, despite the success of the films, Corcoran stopped receiving film royalties in July of 2024 and had only received a total $1,816.35 up to that point, with no explanation as to why the royalty payments ceased or where the remainder of the payments are. One further royalty payment was made to Corcoran on October 7, 2025, from Dark Age Cinema with the memo "UK Payment to June 2025" in the amount of $117, but with no further explanation as to how this amount was calculated or what it was for. With respect to her merchandise royalties, Corcoran has continued to receive sporadic royalty payments, but in more and more infrequent intervals and in ever dwindling amounts. To date, Corcoran has only received a total of approximately $6,408.26 in merchandise royalty payments, with her aggregate back-end royalty payments only totaling approximately $8,341.61. Given the vast success of the films, the rabid fan base and the sheer volume of merchandise widely available for sale at major retailers including among others Walmart, Target, Amazon, Hot Topic, PacSun, Spirit Halloween and Spencers Gifts, these royalty amounts paid to Corcoran strain credulity. When Corcoran confronted Falcone and Leone about the status of her royalty payments and obtaining appropriate back-up, she was brushed off, with Leone stating that Falcone handles all of the accounting matters and then with an aggressive and defensive response from Falcone saying he purportedly "doesn't keep records."

31. To make matters worse and to Corcoran's dismay, Dark Age Cinema, Fuzz on the Lens and Art the Clown are selling *Terrifier* related merchandise bearing Corcoran's nude image, which was obtained without her required informed written consent, while at the same time cheating her out of royalties on the sales.

## FIRST CLAIM FOR RELIEF

## (Violation of Cal. Civ. Code § 1708.85 Distribution of Sexually Explicit Materials Against Falcone, Dark Age Cinema, Art the Clown, Leone and Does 1-10)

32. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

33. Defendants required Corcoran to perform a nude scene in *Terrifier* without obtaining her informed written consent as required by the SAG CBA. The nude scene in the film exposed Corcoran's intimate body parts as that term is defined in subsection (b) of California Civil Code § 1708.85.

34. Defendants Falcone, Dark Age Cinema, Art the Clown and Leone intentionally distributed, and continue to distribute through the present date on a continuing basis, *Terrifier*, which contains video footage and/or still images of Corcoran's intimate body parts as well as sold, and continue to sell, merchandise with still images and artistic renderings of her nude body.

35. The video footage and still images were obtained and distributed without Corcoran's required consent, and were obtained in violation of the SAG CBA and without obtaining Corcoran's informed written consent. Thus, Defendants Falcone, Dark Age Cinema, Art the Clown, and Leone knew or should have known that Corcoran had not provided the required informed written consent for the distribution and dissemination of the foregoing images and footage. As an actual and proximate result of the foregoing, Corcoran has suffered special and general damages, including but not limited to mental anguish and suffering, in an amount to be proved at trial but in any event in excess of the jurisdictional minimum of this Court.

36. Falcone, Dark Age Cinema, Art the Clown and Leone's conduct described herein is a substantial factor in causing Corcoran's harm suffered.

37. Falcone, Dark Age Cinema, Art the Clown, and Leone's conduct was done intentionally and with a conscious disregard of Corcoran's rights, with the intent

to vex, annoy, and/or harass Corcoran. Such conduct was unauthorized and constitutes oppression, fraud, and/or malice under Civil Code section 3294, entitling Corcoran to an award of punitive damages in an amount appropriate to punish or set an example of defendants in an amount to be determined at trial.

38. Corcoran is further entitled to an injunction ordering defendants to cease distribution of the offending material.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

39. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

40. Falcone, Leone, Dark Age Cinema and Art the Clown agreed with Corcoran that, in exchange for Corcoran's provision of acting services on the *Terrifier* film, in addition to her Screen Actor's Guild per diem minimum rate, she was to receive "1% of all profits generated from Terrifier" which includes all profits generated from the exploitation of the *Terrifier* related intellectual property, including without limitation and among other things all box office, streaming, DVD, Blu-ray and VHS proceeds from all motion pictures in the *Terrifier* series, including the original and all sequels, all *Terrifier* related books, video games, live events and other manner of licensing of the *Terrifier* intellectual property, as well as 1% of all net sales of *Terrifier* related merchandise. Upon information and belief these agreements were assigned to and/or assumed by Fuzz on the Lens, Falcone and Does 1-10 in connection with *Terrifier*, *Terrifier 2*, *Terrifier 3* and any subsequent iterations and/or derivations of the Terrifier franchise and/or intellectual property.

41. Corcoran has performed each and every act, condition and covenant incumbent upon her in accordance with the terms of the aforementioned agreement except as excused, waived or prevented by the acts of defendants.

42. Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 have breached their contractual obligations by, among other things, their failure to pay all money owed to Corcoran owed to Corcoran in accordance with their agreement.

43. As a direct and proximate result of the foregoing breaches, Corcoran has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## THIRD CLAIM FOR RELIEF

**(Promissory Fraud Against Falcone, Leone, Dark Age Cinema and Does 1-10)**

44. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

45. To induce Corcoran to perform acting services on *Terrifier* for an extremely low up front per diem rate, Falcone, Leone and Dark Age Cinema fraudulently represented to Corcoran that they intended to comply with the terms of their agreement to pay her 1% of all profits derived from any future exploitation of *Terrifier* related intellectual property, including without limitation all motion pictures and merchandise.

46. Falcone, Leone and Dark Age Cinema never intended to honor or comply with the terms of their agreement to pay these royalties to Corcoran. At the time they were made, these promises were made by Falcone, Leone and Dark Age Cinema without any intention to perform. Falcone, Leone and Dark Age Cinema never intended to fulfill their promises.

47. Instead, through their misrepresentations Falcone, Leone and Dark Age Cinema intended to and did induce Corcoran to provide her acting services on the *Terrifier* film for an extremely low up front per diem rate. Corcoran detrimentally relied on these misrepresentations.

48. Falcone's, Leone's and Dark Age Cinema's fraud has caused Corcoran to suffer damages as alleged herein in an amount to be determined at trial.



49. Falcone's, Leone's and Dark Age Cinema's purposeful and deliberate conduct in defrauding Corcoran into a contract which they had no intention to perform at the time of agreement evidences fraud, malice and despicable conduct entitling Corcoran to an award of punitive and exemplary damages according to proof at trial.

**FOURTH CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

50. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

51. Falcone, Leone, Dark Age Cinema and Art the Clown agreed with Corcoran that, in exchange for Corcoran's provision of acting services on the *Terrifier* film, in addition to her Screen Actor's Guild per diem minimum rate, she was to receive "1% of all profits generated from Terrifier" which includes all profits generated from the exploitation of the *Terrifier* related intellectual property, including without limitation and among other things all box office, streaming, DVD, Blu-ray and VHS proceeds from all motion pictures in the *Terrifier* series, including the original and all sequels, all *Terrifier* related books, video games, live events and other manner of licensing of the *Terrifier* intellectual property, as well as 1% of all net sales of *Terrifier* related merchandise. Upon information and belief these agreements were assigned to and/or assumed by Fuzz on the Lens, Falcone and Does 1-10 in connection with *Terrifier*, *Terrifier 2*, *Terrifier 3* and any subsequent iterations of the Terrifier franchise.

52. Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 have breached the implied covenant of good faith and fair dealing implied in the foregoing agreements with Corcoran by engaging in bad faith conduct intended to frustrate Corcoran's rights to receive the benefits of the agreements. Defendants have engaged in bad faith conduct such as, *inter alia,* providing cryptic and inscrutable descriptions on the "memo" portion of Corcoran's royalty payments,

failing to provide any accounting statement describing how the payment was calculated, providing sporadic and irregular payments and, on information and belief, engaging in improper accounting for the sole and wrongful purpose of avoiding and/or reducing the royalty payment owed to Corcoran.

53. As a direct and proximate result of the breaches by Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 of the implied contractual obligations in the agreements, Corcoran has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## FIFTH CLAIM FOR RELIEF

**(Common Counts – Money Had and Received Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

54. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

55. On information and belief, Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 are indebted to Corcoran in a certain sum for money had and received for use of Corcoran. On information and belief Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 have failed and continue to fail to pay Corcoran the sum she is owed.

56. As a direct and proximate result of the foregoing failure to pay Corcoran the sums owed, Corcoran has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## SIXTH CLAIM FOR RELIEF

**(Violation of Cal. Bus & Prof. Code §§ 17200 and 17500 Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

57. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

58. Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices by virtue of the above alleged conduct, including without limitation failing to obtain the required informed written consent to film any nude scenes and images with Corcoran and then intentionally disseminating and monetizing the wrongfully and improperly obtained images for their own gain. Further, Defendants fraudulently and deliberately failed to pay Corcoran the amounts that she was and is owed pursuant to her contractual agreements concerning the *Terrifier* series and its underlying intellectual property. This conduct constitutes an unlawful, unfair, and fraudulent business act and practice.

59. Corcoran is entitled to preliminary and permanent injunctive relief restraining the Defendants from committing further unfair trade practices, including without limitation the continued dissemination and monetization of nude images and film scenes obtained without the required informed written consent.

## SEVENTH CLAIM FOR RELIEF

**(Accounting Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

60. Corcoran realleges the foregoing paragraphs as though set forth in full herein.

61. By virtue of Corcoran's contractual and economic relationship with Defendants and rights to receive contingent compensation based on the revenues generated from *Terrifier* motion pictures and merchandise or, in the alternative, by the virtue of the parties' course of dealing, Corcoran is entitled to an accounting from Defendants. Defendants are in the best position to know the true and correct amount of revenues generated from the *Terrifier* motion pictures and merchandise to which Corcoran is entitled to a percentage.

62. Defendants have failed and refused to render any accounting to Corcoran. Thus, the true and correct balance due to Corcoran can only be ascertained by an accounting performed under the supervision of the Court.

# PRAYER FOR RELIEF

WHEREFORE, Corcoran prays for judgment against Defendants as follows:

1. For compensatory damages, including interest at the maximum statutory rate, in an amount to be proven at trial;

2. For punitive and exemplary damages as available;

3. For an accounting;

4. For an injunction preventing, among other things, further distribution of nude images of Corcoran obtained in violation of the SAG Agreement.

5. Costs of suit incurred herein, including reasonable attorneys' fees and expenses;

6. For such other and further relief as the Court deems proper.

Dated: October 26, 2025     EARLY SULLIVAN WRIGHT
                              GIZER & McRAE LLP

                            By: _____
                                Devin A. McRae
                                Peter Scott
                                Attorneys for Plaintiff
                                CATHERINE CORCORAN

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by a jury in this action.

Dated: October 26, 2025     EARLY SULLIVAN WRIGHT
                              GIZER & McRAE LLP

                            By: _____
                                Devin A. McRae
                                Peter Scott
                                Attorneys for Plaintiff
                                CATHERINE CORCORAN