Devin A. McRae, State Bar Number 223239
  *dmcrae@earlysullivan.com*
Peter Scott, State Bar Number 247786
  *pscott@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
CATHERINE CORCORAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CATHERINE CORCORAN, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>DARK AGE CINEMA, LLC, a New York limited liability company; ART THE CLOWN, LLC, a New Jersey limited liability company; FUZZ ON THE LENS PRODUCTIONS, LLC, a New York limited liability company; PHIL FALCONE, an individual; DAMIEN LEONE, an individual; and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. 2:25-cv-10284-AB-AS<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**1. Violation of Cal. Civ. Code § 1708.85**<br><br>**2. Breach of Contract**<br><br>**3. Promissory Fraud**<br><br>**4. Breach of Implied Covenant of Good Faith and Fair Dealing**<br><br>**5. Common Counts – Money had and Received**<br><br>**6. Violation of Cal. Bus & Prof. Code § 17200**<br><br>**7. Accounting**<br><br>**8. Common Law Invasion of Privacy** |

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

# I.    __INTRODUCTION__

1.    This case presents an all-too-common story of low budget film producers taking advantage of a young actress through fraud, sexual harassment and, ultimately, betrayal.

2.    The *Terrifier* motion picture series is one of the most popular and profitable independent horror film series produced in the last 25 years. With an initial budget of only $35,000, the film series has spawned three films and has unexpectedly gone on to earn over $100 million at the box office alone, with much more earned through streaming and merchandise.

3.    Plaintiff Catherine Corcoran was cast in the original *Terrifier* film and starred in the series' most iconic and enduring scene, which required her to be hung upside down by her ankles for over ten hours in below freezing temperatures in a condemned building. To accommodate the film's ultra-low budget, Corcoran agreed to act in the film for an extremely low up front per diem rate – barely more than minimum wage, but with an agreement that she would receive 1% of the profits from and/or related to the *Terrifier* motion picture and any future *Terrifier* motion pictures as well as 1% of the profits from any *Terrifier* related merchandise. Corcoran's profit share included not only profits generated strictly from the *Terrifier* films and merchandise, but also profits generated from any exploitation of the intellectual property underlying *Terrifier*, such as books, video games, *Terrifier* themed events and any other manner of licensing or use of the *Terrifier* intellectual property.

4.    The producers of the film paid Corcoran her royalties for a brief period of time several years after the release of the film, but when the film series' success started to grow exponentially and exceeded the producer's original expectations, the royalty payments became more and more sporadic and dwindled to amounts nowhere near commensurate with the revenues generated.

5.    Corcoran's acting in *Terrifier* established the foundational elements in the lore of the series. Corcoran's willingness to work under extremely difficult and

dangerous conditions for essentially minimum wage with the expectation that she would receive her just compensation from the profits of the film allowed *Terrifier* to get made. Were it not for Corcoran's willingness to take a risk on this production and receive her compensation on the back-end, the series would not exist as it could not have been made on a shoe-string budget otherwise. However, when it came time to pay what was owed, the producers chose to cheat her. This injustice must be rectified.

## II.    <u>PARTIES</u>

6.    Plaintiff Catherine Corcoran is an individual and at all relevant times was a citizen of the State of California residing in the County of Los Angeles.

7.    Defendant Phil Falcone is an individual and at all relevant times was a citizen of the State of New Jersey residing in the County of Monmouth.

8.    Defendant Damien Leone is an individual and at all relevant times was a citizen of the State of New York residing in the County of New York.

9.    Defendant Dark Age Cinema, LLC is a New York limited liability company with its principal place of business in the County of New York and whose members are citizens of the state of New York.

10.    Defendant Art the Clown, LLC is a New Jersey limited liability company with its principal place of business in the County of Monmouth and whose members are citizens of the state of New Jersey.

11.    Defendant Fuzz on the Lens Productions, LLC is a New York limited liability company with its principal place of business in the County of New York and whose members are citizens of the state of New York.

12.    The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are presently unknown to Corcoran, and therefore are sued under fictitious names.  Corcoran will seek leave to amend this Complaint to allege the true names and capacities of Does when they are ascertained. Defendants Falcone, Leone, Dark Age Cinema, Art the Clown, Fuzz on the Lens and Does 1 through 10 are referred to collectively herein as "Defendants."

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

13.     On information and belief, Defendants are, and at all times mentioned herein, were, the agents, servants and/or employees of each of the other Defendants, and each of them was acting within the scope of its, his or her authority as the agent, servant and/or employee of each other.  On information and belief, Defendants performed the acts and conduct herein alleged directly, aided and abetted the performance thereof or knowingly acquiesced in, ratified and accepted the benefits of such acts and conduct, and therefore each of the Defendants is liable to the extent of the liability of the Defendants as alleged herein; consequently, all Defendants are jointly and severally liable to Corcoran for the damages sustained as a proximate result of their conduct.

14.     On information and belief, at all times herein material, Dark Age Cinema, Art the Clown and Fuzz on the Lens were and are completely dominated and controlled by their co-Defendants and each was the alter-ego of the other and that the corporate form for each was utilized as a mere instrumentality to perpetrate a fraud or for other improper or unlawful purposes. Corcoran is informed and believes the piercing the corporate veil and disregard of the corporate form with respect to Dark Age Cinema, Art the Clown and Fuzz on the Lens is appropriate and warranted in this instance as numerous indicia of alter-ego liability are present here, including without limitation, that each company shared officers and directors, shared office space, employees and property, that little to no corporate formalities were adhered to, that funds and contractual obligations were commingled between the companies and with the individual defendants Leone and Falcone's personal funds, that the companies were undercapitalized and insolvent, and that the Defendants treated the assets of the other entity Defendants as their own, among other things.

15.     Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly and severally.  Whenever and wherever reference is made to individuals who are not

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employment.

### III.  **JURISDICTION AND VENUE**

16.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the State of California and diversity exists because all named Defendants are citizens of New York and New Jersey. The amount in controversy exceeds $75,000. This case involves entities with sufficient contacts with California to make proper the exercise of personal jurisdiction over them.

17.    Venue is proper in this Court. A substantial part of the acts or omissions giving rise to the claims alleged occurred in Los Angeles County, California.

### IV.  **ALLEGATIONS**

18.    In or around the summer of 2015, Defendant Leone undertook efforts to develop  a feature-length slasher horror film involving several lead female ingénues and the antagonist character Art the Clown. The new feature-length film, under the working title *Terrifier* was to be developed on an extremely low budget of only approximately $35,000, which was funded by Defendant Falcone. The film was jointly produced by Leone's production company, Dark Age Cinema and Falcone.

19.    Corcoran was cast in the role of Dawn, a character with the most dangerous, but also one of the most iconic and enduring scenes in the entire film series, wherein she was to be hung upside down and shackled by her feet, without any real safety measures in place, and sawed in half with a hacksaw.

20.    To accommodate the production of the film, Corcoran, who was the only established talent signed on to the film at the time, agreed to work for an *extremely* low up front daily rate and to take a percentage of the back-end profits of the film series. On July 8, 2015, Dark Age Cinema and Corcoran entered into a Screen Actors Guild Employment of Performer for Ultra Low Budget Film form agreement for Corcoran's employment in the role of Dawn that set her daily rate at $100 (the "SAG

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Agreement"). A true and correct copy of the SAG Agreement is attached hereto as **Exhibit 1**. Upon information and belief Dark Age Cinema has the fully executed version of the document within its possession, custody and control.

21.    At the time the SAG Agreement was executed,[1] the Screen Actors Guild Collective Bargaining Agreement required producers to obtain the informed written consent from an actress before filming any scenes involving nudity and/or simulated sexual activity. The written consent must include a general description of the extent of the nudity and type of physical contact required in the scene. Without such informed written consent, any film or still images involving nudity and/or simulated sexual activity are *de facto* and *de jure* deemed to have been obtained without the actress's consent. Plaintiff's informed written consent for nudity or simulated sexual contact in connection with the film was never obtained by any of Dark Age Cinema, Falcone, Leone or any other Defendants.

22.    Concurrently with the SAG Agreement, on July 8, 2015, Dark Age Cinema, entered into a written "Mutual Non-Disclosure Agreement" with Corcoran wherein, in exchange for Corcoran's agreement not to disclose information concerning the nature of the film and to further compensate her for her work on the film and agreement to take an extremely low up front daily rate, Dark Age Cinema agreed that Corcoran "will receive 1% of profits from 'Terrifier.'" To be clear, "Terrifier" is not only the appellation of the initial *Terrifier* motion picture, but, at the time of contracting, was understood by all parties to mean and refer also to the brand, trade name and trade dress for the entire *Terrifier* oeuvre, including potential subsequent films in the series (i.e. *Terrifier 2*, *Terrifier 3*, etc.), cast of characters and story and was utilized by the parties to refer interchangeably with, and in the broadest

---

[1] These protections were strengthened and further bolstered with, among other things, even more stringent consent requirements through a major overhaul of the nudity provisions of the Screen Actors Guild Collective Bargaining Agreement in 2020 and 2023.

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

1  sense possible to, the Terrifier film franchise, cinematic universe and underlying

2  intellectual property in general and any exploitation thereof.[2]

3      23.    This written Mutual Non-Disclosure Agreement was prepared by Dark

4  Age Cinema and sent to Corcoran for signature. Corcoran signed the document as

5  sent to her by Dark Age Cinema with no changes on July 8, 2015, and sent it back to

6  Dark Age Cinema. Upon information and belief, Dark Age Cinema counter-signed

7  the document and has the fully executed document within its possession, custody and

8  control. A true and correct copy of the Mutual Non-Disclosure Agreement received

9  and signed by Corcoran is attached hereto as **Exhibit 2**.

10      24.    Principal shooting took place through the fall and winter of 2015.

11  Corcoran and her co-stars worked through long, grueling overnight shoots under

12  extreme conditions. The low-budget nature of the production carried over into the

13  working conditions on set, including long hours in below freezing temperatures in

14  condemned buildings, all without heat and some without bathrooms. The so-called

15  "practical effects" that made *Terrifier* so compelling on screen involved the director

16  placing prosthetics with actual rat feces on Corcoran's skin and real duct tape over

17  her mouth. Further, when creating the silicone mold for Corcoran's body cast, the

18  producers of the film required Corcoran to lie nude on a piece of plywood while she

19  was covered with a quick-drying liquid silicone agent. However, the process was done

20  incorrectly and the silicone dried and essentially glued Corcoran to the plywood,

21  requiring a long, painful process to remove the dried silicone from her body. To make

22

23  [2] Indeed, Defendants' trademark registrations reflect their use of the term "Terrifier"

24  to mean and refer generally to the Terrifier film franchise and related intellectual property – e.g. registering the mark "Terrifier" for "motion picture films about horror,

25  terror or suspense subjects; downloadable motion pictures and television shows about horror, terror or suspense subjects" and registering the mark "Terrifier" for "Tee

26  shirts; shorts; Adult dress-up costumes in the nature of Scary Clown; outer jackets;

27  sweatshirts; Halloween costumes and masks sold in connection therewith," among other registrations.

28

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

matters worse, Falcone took numerous still photographs of Corcoran's nude body while she was glued to the plywood sheet without her knowledge and/or consent. Upon information and belief, Dark Age Cinema, Art the Clown, Falcone, Leone and/or Does 1 through 10 have intentionally distributed and continue to distribute one or more of these nude still photographs to third parties without Corcoran's consent, including by electronic means.

25.    Corcoran's defining scene in the film involves her being suspended upside down by her ankles and sawed in half by the film's antagonist, Art the Clown. This scene called for Corcoran to be nude. Defendants never obtained Corcoran's informed written consent to film Corcoran nude in this scene as required by the SAG CBA in effect at the time. When Corcoran appeared on set to film the scene, she recognized that she was the only female on set. Falcone and Leone informed Corcoran that the scene was to be done with Corcoran fully nude. However, Corcoran insisted that she be permitted to at least wear underwear during the filming, to which Falcone and Leone ultimately acquiesced. However, she was still required by Falcone and Leone to perform the scene topless without having been provided with the informed written consent and disclosures required by her SAG Agreement.  Additionally, during filming of the scene, a crew member under the employ of Dark Age Cinema took photographs of Corcoran while she was hung upside down and nude. These photographs were taken without Corcoran's knowledge or consent and, upon information and belief, Dark Age Cinema, Art the Clown, Falcone, Leone and/or Does 1 through 10 have intentionally distributed and continue to distribute one or more of these nude still photographs to third parties without Corcoran's consent, including by electronic means.

26.    During filming of the scene, to mitigate the pooling of blood in her head while suspended by her ankles, filming of the scene took place in 40-second increments for over ten hours, with a platform being intermittently placed underneath Corcoran and her nude body lifted by the men on set to bring her horizontal. This

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

procedure was only done as a result of Corcoran's request and, had she not made this request, these safety measures would not have been taken. This procedure, however, never fully allowed the blood to properly recirculate and it simply pooled in her head each time she was again hung upside down. Filming of the scene took place in a condemned building in 20-degree weather. Corcoran was wrapped in a blanket in between takes, but over time the blanket became so saturated with fake blood that it ceased providing any warmth. At the conclusion of filming the scene in the early morning hours of the following day, Corcoran was cursorily toweled down, given back her bathrobe and winter coat and then placed on the Staten Island Ferry back to her apartment. During and for several days after filming the scene Corcoran felt ill. When she visited her doctor, she was told that she had suffered cranial swelling and eardrum damage as a result of being hung upside down for this length of time in these working conditions.

27.     *Terrifier* premiered in October 2016 at the Telluride Horror Show Film Festival before opening the IFC Midnight's Scary Movie Showcase at Lincoln Center in July of 2017. While the film was an organic, sleeper-hit with audiences – including the sellout crowd at the Lincoln Center – it had yet to translate into any real financial success. The film was picked up for limited theatrical release on March 15 and 16, 2018 and was released shortly thereafter on DVD and Blu-ray on March 27, 2018. The film also began streaming on Netflix in the fall of 2018.

28.     Corcoran had yet to receive any of her promised back-end royalties on the profits generated from the film. However, in light of the limited theatrical release and still underground nature of the film, she had no reason to suspect that these royalties were being concealed from her and simply assumed that no profits had yet been generated. At or around this time, Leone further agreed in writing to provide Corcoran with a share in 1% of all net sales generated from *Terrifier* related merchandise.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

29.    In 2019, Leone commenced writing a sequel to *Terrifier*, entitled *Terrifier 2*, and sought funding from private investors as well as through crowdfunding sources, although this time with a much larger anticipated budget of approximately $250,000. Due to the popularity of the first film, this crowdfunding goal was met in less than one week after going live. *Terrifier 2* was directed by Leone and produced by Dark Age Cinema and Fuzz on the Lens Productions.

30.    Filming of *Terrifier 2* commenced in October 2019, but was put on hold during the COVID-19 pandemic and wrapped in July 2021. Although Corcoran does not act in the film, she is credited for a photographic cameo in the film as Dawn from the original *Terrifier* and signed a Screen Actors Guild re-use agreement in connection with the film. Additionally, an artistic rendering of Corcoran's nude body based on the nude scene from the original *Terrifier* appears in *Terrifier 2*.  Again, there was no SAG CBA informed written consent for nudity provided by Corcoran.

31.    *Terrifier 2* had a much wider theatrical release, being released on October 6, 2022 in 886 theaters in the United States and grossing $400,000 on its opening day. It went on to debut to $805,000 and then made $1,000,000 the following weekend. The trade publications were taken aback by the film's success in light of its limited budget and lack of marketing. *Terrifier 2*'s run at the box office was extended to multiple weekends and it ended up grossing over $10,000,000 in its initial run in North America and an additional nearly $5,000,000 worldwide. The success of *Terrifier 2* generated renewed interest in the original *Terrifier*, which was re-released in theaters in 2023, grossing over $400,000.

32.    The *Terrifier* films also became available on various streaming platforms including Netflix, Amazon Prime, Peacock, Screambox, Tubi and others and was also released on physical media including Blu Ray, DVD and VHS.

33.    It was during this time period in December 2022 that Corcoran began to receive sporadic royalty payments from both Dark Age Cinema and the Art the Clown, without any clear explanation why checks were issued by one entity and not

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5833957.1

10

**FIRST AMENDED COMPLAINT**

the other. The Memo lines on the checks were cryptic as to exactly what the payment was for (e.g. "DIST T1," "Q1 EPIC" or just "Merchandise") and there was no accompanying accounting statement reflecting how the payment figure was derived. Corcoran was left to trust that Defendants were honoring their agreements to pay her the royalties that were owed. From Corcoran's perspective, the success of *Terrifier 2* and renewed interest in the original *Terrifier* seemed to correspond with the commencement of her royalty payments, so she did not have reason to suspect she was being cheated.

34.    A third installment in the series, the aptly named *Terrifier 3*, had wide release on October 11, 2024. *Terrifier 3* was a major motion picture with a $2,000,000 budget and corresponding commercial expectations. It was directed again by Leone and produced by Dark Age Cinema and Fuzz on the Lens Productions. The film grossed $90.3 million in domestic and international box office receipts and was released on multiple streaming platforms as well as distributed via DVD and Blu-ray. Capitalizing on the success of the franchise, *Terrifier* and *Terrifier 2* were also subsequently released to international box offices, generating additional revenues.

35.    However, despite the success of the films, Corcoran stopped receiving film royalties in July of 2024 and had only received a total $1,816.35 up to that point, with no explanation as to why the royalty payments ceased or where the remainder of the payments are. One further royalty payment was made to Corcoran on October 7, 2025, from Dark Age Cinema with the memo "UK Payment to June 2025" in the amount of $117, but with no further explanation as to how this amount was calculated or what it was for. With respect to her merchandise royalties, Corcoran has continued to receive sporadic royalty payments, but in more and more infrequent intervals and in ever dwindling amounts. As of the filing of this action, Corcoran had only received a total of approximately $6,408.26 in merchandise royalty payments, with her aggregate back-end royalty payments only totaling approximately $8,341.61. Given the vast success of the films, the rabid fan base and the sheer volume of merchandise

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

widely available for sale at major retailers including among others Walmart, Target, Amazon, Hot Topic, PacSun, Spirit Halloween and Spencer Gifts, these royalty amounts paid to Corcoran strain credulity. When Corcoran confronted Falcone and Leone about the status of her royalty payments and obtaining appropriate back-up, she was brushed off, with Leone stating that Falcone handles all of the accounting matters and then with an aggressive and defensive response from Falcone saying he purportedly "doesn't keep records."[3]

36.    To make matters worse and to Corcoran's dismay, Dark Age Cinema, Fuzz on the Lens and Art the Clown are selling *Terrifier* related merchandise bearing Corcoran's nude image, which was obtained without her required informed written consent, while at the same time cheating her out of royalties on the sales.

## **FIRST CLAIM FOR RELIEF**

### **(Violation of Cal. Civ. Code § 1708.85 Distribution of Sexually Explicit Materials Against Falcone, Dark Age Cinema, Art the Clown, Leone and Does 1-10)**

37.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

38.    Defendants required Corcoran to perform a nude scene in *Terrifier* without obtaining her informed written consent as required by the SAG CBA in effect at the time of production. Defendants were aware of this requirement and knowingly proceeded without obtaining such consent from Corcoran. Corcoran's consent to appear in *Terrifier* was limited, conditional, and circumscribed by written agreements, union requirements and Defendants' representations. Corcoran did not provide blanket or unrestricted consent to the filming, distribution, or commercial exploitation of nude scenes or nude images obtained by Defendants absent compliance with the

[3] After this action was filed against Defendants, Defendants Art the Clown and Dark Age Cinema paid Corcoran a total of $2,056.87 in November and December 2025.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1  SAG mandatory informed written consent procedures. Thus, the nude scene was not

2  created under an agreement, as that phrase is utilized in Civil Code § 1708.85(c)(1).

3    39.    Corcoran's on-set acquiescence to film the nude scene in *Terrifier* was

4  obtained under coercive circumstances, including unequal bargaining power, time

5  pressure, Defendants' control over the production environment and the leveraging of

6  her vulnerable position as the sole female performer present. Corcoran's acquiescence

7  under these circumstances did not and does not constitute voluntary, informed, or

8  knowing consent to public dissemination of images of her nude body as contemplated

9  by Civil Code § 1708.85. Corcoran further never consented in any respect to the

10  widespread distribution of still images and artistic renderings of her nude body outside

11  of the film.

12    40.    Additionally, Corcoran was not provided with advance viewing or final

13  approval of the nude scene prior to the release of the film and, thus, was not aware of

14  the extent that her nude body was to be portrayed in the film and was not provided

15  with the opportunity to provide feedback, to express limitations or to otherwise

16  provide consent to the release of the nude scene as depicted in the actual film.

17  Corcoran, thus, retained a reasonable expectation of privacy as to such material due

18  to the foregoing, including without limitation the absence of informed written

19  consent, the coercive circumstances of filming, and the non-essential nature of the

20  nudity to Defendants' purported expressive purpose with the film.

21    41.    Defendants Falcone, Dark Age Cinema, Art the Clown and Leone

22  intentionally distributed, and continue to distribute through the present date on a

23  continuing basis, *Terrifier and Terrifier 2*, which contains video footage and/or still

24  images of Corcoran's intimate body parts as well as sold, and continue to sell through

25  the present date,  merchandise with still images and artistic renderings of her nude

26  body and to otherwise license and commercially exploit these still images and artistic

27  renderings, including without limitation as props, designs, backdrops and other uses

28  at *Terrifier* themed events, such as conferences and themed haunted houses.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

42.     Additionally, during production of *Terrifier*, Falcone and another crew member in the employ of Dark Age Cinema took multiple still photographs depicting Plaintiff's nude body while she was immobilized during the silicone molding process and/or hung upside down without her knowledge and/or consent. These photographs were not taken as part of any filmed scene, were not required for production, and were taken without Plaintiff's knowledge and/or consent and without her ability to stop Falcone and the crew member due to her immobilization. These still images are different from and are in addition to the still images and artistic renderings utilized in the *Terrifier* merchandise and *Terrifier* themed events and are "behind the scenes" images taken during the making of the film.

43.     Upon information and belief, Dark Age Cinema, Art the Clown, Falcone, Leone and Does 1 through 10 thereafter intentionally distributed, and continue to distribute through the present, one or more of these nude still photographs to third parties without Corcoran's consent, including by electronic means, and the foregoing defendants knew or reasonably should have known that Corcoran did not consent to the taking of these images and certainly did not consent to their disclosure to third parties..

44.     The nude scene and images in the films and the still "behind the scenes" images taken by Falcone and the Dark Age Cinema crew member exposed and depicted Corcoran's intimate body parts as that term is defined in subsection (b) of California Civil Code § 1708.85. These nude film and still images were and are not subject to any statutory safe harbor, as they were not created under an agreement, were not filmed or taken in a public place, were not made accessible to the general public by Corcoran, and were not a matter of public concern.

45.     The video footage and still images were obtained and distributed without Corcoran's required consent, and were obtained in violation of the SAG CBA and without obtaining Corcoran's informed written consent. Thus, Defendants Falcone, Dark Age Cinema, Art the Clown, and Leone knew or should have known that

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Corcoran had not provided the required informed written consent for the distribution and dissemination of the foregoing images and footage. As an actual and proximate result of the foregoing, Corcoran has suffered general damages, including but not limited to mental anguish and suffering, shame, mortification, and emotional distress, as well as special damages, including loss of control over her image and economic harm, in an amount to be proved at trial but in any event in excess of the jurisdictional minimum of this Court.

46.    Falcone, Dark Age Cinema, Art the Clown and Leone's conduct described herein is a substantial factor in causing Corcoran's harm suffered.

47.    Falcone, Dark Age Cinema, Art the Clown, and Leone's conduct was done intentionally and with a conscious disregard of Corcoran's rights, with the intent to vex, annoy, and/or harass Corcoran. Such conduct was unauthorized and constitutes oppression, fraud, and/or malice under Civil Code section 3294, entitling Corcoran to an award of punitive damages in an amount appropriate to punish or set an example of defendants in an amount to be determined at trial.

48.    Corcoran is further entitled to an injunction ordering defendants to cease distribution of the offending material.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

49.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

50.    Falcone, Leone, and Dark Age Cinema agreed with Corcoran that, in exchange for Corcoran's provision of acting services on the *Terrifier* film, in addition to her Screen Actor's Guild per diem minimum rate, she was to receive "1% of all profits generated from Terrifier" which includes all profits generated from the exploitation of the *Terrifier* related intellectual property, including without limitation and among other things all box office, streaming, DVD, Blu-ray and VHS proceeds

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

from all motion pictures in the *Terrifier* series, including the original and all sequels, all *Terrifier* related books, video games, live events and other manner of licensing of the *Terrifier* intellectual property, as well as 1% of all net sales of *Terrifier* related merchandise. Upon information and belief these agreements were assigned to and/or assumed by Art the Clown, Fuzz on the Lens, and Does 1-10 in connection with *Terrifier*, *Terrifier 2*, *Terrifier 3* and any subsequent iterations and/or derivations of the Terrifier franchise and/or intellectual property, as evidenced by Corcoran's receipt of, albeit sporadic, payments from Art the Clown pursuant to this agreement.

51.    Corcoran has performed each and every act, condition and covenant incumbent upon her in accordance with the terms of the aforementioned agreement except as excused, waived or prevented by the acts of defendants.

52.    Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 have breached their contractual obligations by, among other things, their failure to pay all money owed to Corcoran in accordance with their agreement.

53.    As a direct and proximate result of the foregoing breaches, Corcoran has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## **THIRD CLAIM FOR RELIEF**

### **(Promissory Fraud Against Falcone, Leone, Dark Age Cinema and Does 1-10)**

54.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

55.    To induce Corcoran to perform acting services on *Terrifier* for an extremely low up front per diem rate, Falcone, Leone and Dark Age Cinema fraudulently represented to Corcoran that they intended to comply with the terms of their agreement to pay her 1% of all profits derived from any future exploitation of *Terrifier* related intellectual property, including without limitation all motion pictures and merchandise.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

56.     Falcone, Leone and Dark Age Cinema never intended to honor or comply with the terms of their agreement to pay these royalties to Corcoran. At the time they were made, these promises were made by Falcone, Leone and Dark Age Cinema without any intention to perform. Falcone, Leone and Dark Age Cinema never intended to fulfill their promises.

57.     Instead, through their misrepresentations Falcone, Leone and Dark Age Cinema intended to and did induce Corcoran to provide her acting services on the *Terrifier* film for an extremely low up front per diem rate. Corcoran detrimentally relied on these misrepresentations.

58.     Falcone's, Leone's and Dark Age Cinema's fraud has caused Corcoran to suffer damages as alleged herein in an amount to be determined at trial.

59.     Falcone's, Leone's and Dark Age Cinema's purposeful and deliberate conduct in defrauding Corcoran into a contract which they had no intention to perform at the time of agreement evidences fraud, malice and despicable conduct entitling Corcoran to an award of punitive and exemplary damages according to proof at trial.

## FOURTH CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

60.     Corcoran realleges the foregoing paragraphs as though set forth in full herein.

61.     Falcone, Leone and Dark Age Cinema agreed with Corcoran that, in exchange for Corcoran's provision of acting services on the *Terrifier* film, in addition to her Screen Actor's Guild per diem minimum rate, she was to receive "1% of all profits generated from Terrifier" which includes all profits generated from the exploitation of the *Terrifier* related intellectual property, including without limitation and among other things all box office, streaming, DVD, Blu-ray and VHS proceeds from all motion pictures in the *Terrifier* series, including the original and all sequels, all *Terrifier* related books, video games, live events and other manner of licensing of

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

the *Terrifier* intellectual property, as well as 1% of all net sales of *Terrifier* related merchandise. Upon information and belief these agreements were assigned to and/or assumed by Art the Clown, Fuzz on the Lens and Does 1-10 in connection with *Terrifier*, *Terrifier 2*, *Terrifier 3* and any subsequent iterations of the Terrifier franchise, as evidenced by Corcoran's receipt of, albeit sporadic, payments from Art the Clown pursuant to this agreement.

62.    Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 have breached the implied covenant of good faith and fair dealing implied in the foregoing agreements with Corcoran by engaging in bad faith conduct intended to frustrate Corcoran's rights to receive the benefits of the agreements. Defendants have engaged in bad faith conduct such as, *inter alia*, providing cryptic and inscrutable descriptions on the "memo" portion of Corcoran's royalty payments, failing to provide any accounting statement describing how the payment was calculated, refusing to provide information when requested by Corcoran, failing and refusing to act diligently in collecting monies that are otherwise owed to Corcoran, providing sporadic and irregular payments and, on information and belief, engaging in improper accounting for the sole and wrongful purpose of avoiding and/or reducing the royalty payment owed to Corcoran.

63.    As a direct and proximate result of the breaches by Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 of the implied contractual obligations in the agreements, Corcoran has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

## FIFTH CLAIM FOR RELIEF

### (Common Counts – Money Had and Received Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)

64.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

**FIRST AMENDED COMPLAINT**

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

65.    On information and belief, Dark Age Cinema, Art the Clown,  Fuzz on the Lens, Falcone, Leone and Does 1-10 are indebted to Corcoran in a certain sum for money had and received for use of Corcoran. On information and belief Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10 have failed and continue to fail to pay Corcoran the sum she is owed.

66.    As a direct and proximate result of the foregoing failure to pay Corcoran the sums owed, Corcoran has suffered monetary damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum of this Court.

### SIXTH CLAIM FOR RELIEF

**(Violation of Cal. Bus & Prof. Code §§ 17200 Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)**

67.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

68.    Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices by virtue of the above alleged conduct, including without limitation failing to obtain the required informed written consent to film any nude scenes and images with Corcoran and then intentionally disseminating and monetizing the wrongfully and improperly obtained images for their own gain, including without limitation by and through sales and dissemination of such items within the State of California within the relevant statute of limitations period. Further, Defendants fraudulently and deliberately failed to pay Corcoran the amounts that she was and is owed pursuant to her contractual agreements concerning the *Terrifier* series and its underlying intellectual property. This conduct constitutes an unlawful, unfair, and fraudulent business act and practice.

69.    Corcoran is entitled to preliminary and permanent injunctive relief restraining the Defendants from committing further unfair trade practices, including without limitation the continued dissemination and monetization of nude images and film scenes obtained without the required informed written consent.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

## SEVENTH CLAIM FOR RELIEF

### (Accounting Against Dark Age Cinema, Art the Clown, Fuzz on the Lens, Falcone, Leone and Does 1-10)

70.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

71.    By virtue of Corcoran's contractual and economic relationship with Defendants and rights to receive contingent compensation based on the revenues generated from *Terrifier* motion pictures and merchandise or, in the alternative, by the virtue of the parties' course of dealing, Corcoran is entitled to an accounting from Defendants. Defendants are in the best position to know the true and correct amount of revenues generated from the *Terrifier* motion pictures and merchandise to which Corcoran is entitled to a percentage.

72.    Defendants have failed and refused to render any accounting to Corcoran. Thus, the true and correct balance due to Corcoran can only be ascertained by an accounting performed under the supervision of the Court, as Defendants alone control the books and records of account relating to the amounts owed to Corcoran.

## EIGHTH CLAIM FOR RELIEF

### (Common Law Invasion of Privacy – Public Disclosure of Private Facts Against Dark Age Cinema, Art the Clown, Falcone, Leone and Does 1-10)

73.    Corcoran realleges the foregoing paragraphs as though set forth in full herein.

74.    Defendants Dark Age Cinema, Art the Clown, Falcone and Leone publicly disclosed private facts concerning Corcoran by intentionally distributing, republishing, and monetizing nude images and footage depicting Corcoran's intimate body parts without her informed consent.

75.    The disclosed facts concerned highly personal and intimate aspects of Corcoran's physical privacy and were not matters of legitimate public concern.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

76.    Any limited consent Corcoran gave to perform in a motion picture was expressly conditioned on Dark Age Cinema, Art the Clown, Falcone and Leone's compliance with informed consent requirements and did not extend to unrestricted public disclosure of her nude body.

77.    The disclosure of Corcoran's nude body under these circumstances would be highly offensive to a reasonable person.

78.    Dark Age Cinema, Art the Clown, Falcone and Leone's conduct was intentional, reckless, and undertaken for commercial gain, and was a substantial factor in causing Corcoran to suffer humiliation, emotional distress, loss of dignity, reputational harm, and economic injury.

79.    Dark Age Cinema, Art the Clown, Falcone and Leone's conduct was oppressive, fraudulent, and malicious within the meaning of Civil Code § 3294, entitling Corcoran to punitive damages.

80.    Corcoran seeks injunctive relief prohibiting Dark Age Cinema, Art the Clown, Falcone and Leone's from further publishing, distributing, licensing, or otherwise exploiting the private facts described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Corcoran prays for judgment against Defendants as follows:

1.    For compensatory damages, including interest at the maximum statutory rate, in an amount to be proven at trial;

2.    For punitive and exemplary damages as available;

3.    For an accounting;

4.    For an injunction preventing, among other things, further distribution of nude images of Corcoran obtained in violation of the SAG Agreement and/or without her consent.

5.    Costs of suit incurred herein, including reasonable attorneys' fees and expenses;

6.    For such other and further relief as the Court deems proper.

Dated:  January 9, 2026       EARLY SULLIVAN WRIGHT
                           GIZER & McRAE LLP

By: _____
            Devin A. McRae
            Peter Scott
            Attorneys for Plaintiff
            CATHERINE CORCORAN

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by a jury in this action.

Dated:  January 9, 2026       EARLY SULLIVAN WRIGHT
                           GIZER & McRAE LLP

By: _____
            Devin A. McRae
            Peter Scott
            Attorneys for Plaintiff
            CATHERINE CORCORAN



EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
ATTORNEYS AT LAW