ALEXANDER F. PORTER (State Bar No. 258597)
  alexporter@dwt.com
NICOLE S. PHILLIS (State Bar No. 291266)
  nicolephillis@dwt.com
SANCHO ACCORSI (State Bar No. 329413)
  sanchoaccorsi@dwt.com
FELIX MURPHET (State Bar No. 354456)
  felixmurphet@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendants
DARK AGE CINEMA, LLC; ART THE
CLOWN, LLC; FUZZ ON THE LENS
PRODUCTIONS, LLC; PHIL FALCONE;
DAMIEN LEONE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CATHERINE CORCORAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DARK AGE CINEMA, LLC, a New York limited liability company; ART THE CLOWN, LLC, a New Jersey limited liability company; FUZZ ON THE LENS PRODUCTIONS, LLC, a New York limited liability company; PHIL FALCONE, an individual; DAMIEN LEONE, an individual,<br><br>Defendants. | Case No. **2:25-cv-10284**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declaration of Nicole S. Phillis; Declaration of Damien Leone; Request for Judicial Notice; and [Proposed] Order*]<br><br>Date:        March 13, 2026<br>Time:        10:00 a.m.<br>Courtroom:  7B<br><br>Assigned to the Hon. André Birotte, Jr.<br><br>Action Filed:  October 26, 2025 |

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# NOTICE OF MOTION

TO:   PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-captioned court, Courtroom 7B at the First Street U.S. Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendants Dark Age Cinema, LLC; Art the Clown, LLC; Fuzz on the Lens Productions, LLC; Phil Falcone; and Damien Leone will and do move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Catherine Corcoran's First Amended Complaint (FAC) in its entirety and with prejudice.

Plaintiff's FAC implausibly alleges that the widely distributed, feature-length, commercial film *Terrifier*—in which she agreed to and did star—is "revenge porn" under California Civil Code Section 1708.85.  Further, Plaintiff tries to retroactively entitle herself to the significant financial success of *Terrifier 2* and *3*—in which she did not star—by alleging breach of contract based on sweeping royalty entitlements found nowhere in the agreements under which she made *Terrifier*.  Her ancillary claims for breach of the implied covenant of good faith and fair dealing, money had and received, an accounting, promissory fraud, violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and common law invasion of privacy also fail.

This Motion is based upon this Notice of Motion and the supporting Memorandum of Points and Authorities; the concurrently filed Declaration of Nicole S. Phillis, Declaration of Damien Leone, and Request for Judicial Notice; all pleadings and other papers on file; and such other evidence and argument as the Court may entertain.

Pursuant to Local Rule 7-3, the parties held a prefiling conference on January 14, 2026, to discuss the above bases for dismissal.  Phillis Decl. ¶ 3.  Plaintiff chose not to amend or withdraw her FAC.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: January 23, 2026

DAVIS WRIGHT TREMAINE LLP
ALEXANDER F. PORTER
NICOLE S. PHILLIS
SANCHO ACCORSI
FELIX MURPHET


By: s/ *Alexander F. Porter*
　　　　　Alexander F. Porter
Attorneys for Defendants
DARK AGE CINEMA, LLC; ART
THE CLOWN, LLC; FUZZ ON THE
LENS PRODUCTIONS, LLC; PHIL
FALCONE; DAMIEN LEONE

---

ii

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF CONTENTS

                                                                                    **Page**

I.     INTRODUCTION ..................................................................................... 1

II.    BACKGROUND ...................................................................................... 2

       A.    Plaintiff Stars in the Ultra-Low Budget Indie Movie *Terrifier*............ 2

       B.    Defendants Re-Release *Terrifier* as *Terrifier 2* and *3* Take Off. ......... 4

       C.    Plaintiff Attempts to Rewrite Her Contract..................................... 5

III.   LEGAL STANDARD................................................................................. 5

IV.    THE COURT SHOULD DISMISS THE FAC ............................................... 6

       A.    Plaintiff's "Revenge Porn" Claim Fails. ................................... 6

             1.    Plaintiff Does Not Plead Multiple Elements of Revenge Porn. ................................................................. 6

                   a.    Plaintiff's Allegations Negate Any Expectation of Privacy. ................................................................. 6

                   b.    Plaintiff Pleads Her Own Actual and Apparent Consent. ................................................................. 8

             2.    Plaintiff Does Not Allege Distribution of Any Stills............... 10

             3.    Plaintiff Alleges Multiple Revenge Porn Safe Harbors.......... 11

             4.    The Revenge Porn Claim Is Time-Barred. ........................... 12

             5.    The LMRA Preempts the Revenge Porn Claim..................... 12

       B.    Plaintiff's Breach of Contract Claim Fails..................................... 13

             1.    New York Law Applies. .......................................... 13

             2.    Plaintiff Alleges No Breach of the NDA. .............................. 14

                   a.    The Royalty Clause Excludes *Terrifier* Sequels............ 15

                   b.    The Royalty Clause Excludes Derivative Works. ......... 18

                   c.    The Royalty Clause Excludes Merchandise. ................. 19

             3.    Plaintiff Alleges No Breach of the Merchandising Agreement. ........................................................ 19

       C.    Plaintiff's Remaining Claims Fail...................................... 19

             1.    No Breach of Implied Covenant. ........................................ 19

iii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2.    No Money Had and Received. ................................................ 21

3.    Not Entitled to an Accounting. .............................................. 21

4.    No Promissory Fraud. ........................................................... 22

5.    No UCL Claim. ..................................................................... 23

6.    No Invasion of Privacy Claim. .............................................. 24

V.    CONCLUSION ................................................................................... 25

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

iv

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahlstrom v. DHI Mortg. Co.*,
21 F.4th 631 (9th Cir. 2021) ........................................................................ 15

*Aisenson v. Am. Broad. Co.*,
220 Cal. App. 3d 146 (1990) ........................................................................ 25

*Alaska Airlines Inc. v. Schurke*,
898 F.3d 904 (9th Cir. 2018) ........................................................................ 12

*Amable v. New Sch.*,
551 F. Supp. 3d 299 (S.D.N.Y. 2021) .................................................... 14, 21

*Aryeh v. Canon Bus. Sols.*,
55 Cal. 4th 1185 (2013) ................................................................................ 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................5

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...........................................................3

*Bay Cities Paving & Grading v. Lawyers' Mut. Ins. Co.*,
5 Cal. 4th 854 (1993) .................................................................................... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 5, 6, 11

*Blue Stone Ent. LLC v. AGS CJ Corp.*,
2021 WL 918295 (S.D.N.Y. Mar. 10, 2021) ............................................ 16, 19

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*,
98 F.3d 13 (2d Cir. 1996) .............................................................................. 23

*Cadwalader Wickersham & Taft v. Spinale*,
576 N.Y.S.2d 24 (N.Y. App. Div. 1991) ....................................................... 14

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .............................................................................6

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Cassab v. Duringer L. Grp., PLC.*,
2022 WL 18232571 (C.D. Cal. Nov. 22, 2022 ......................................................8

*Catena v. Cap. Records, LLC*,
2012 WL 12942740 (C.D. Cal. 2012) ................................................................ 24

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*,
773 F.3d 110 (2d Cir. 2014)............................................................................... 16

*Coldwell Banker Real Est. LLC v. New All. Props.*,
2017 WL 5635023 (C.D. Cal. June 15, 2017) ................................................... 21

*Coles v. Aramark Sports & Ent. Grp.*,
298 F. App'x 670 (9th Cir. 2008) ..................................................................... 13

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .............................................................. 12

*Dorros v. JPMorgan Chase Bank, N.A.*,
2012 WL 13005961 (C.D. Cal. June 20, 2012) ................................................. 21

*EVO Brands, LLC v. Al Khalifa Grp. LLC*,
657 F. Supp. 3d 1312 (C.D. Cal. 2023) ............................................................ 18

*Faconnable Casa v. A. Joffe USA, Inc.*,
2009 WL 10675119 (C.D. Cal. Sept. 22, 2009) ............................................... 22

*Flynn v. McGraw Hill LLC*,
120 F.4th 1157 (2d Cir. 2024) ........................................................... 15, 16, 19

*Foley v. Interactive Data Corp.*,
47 Cal. 3d 654 (1988) ....................................................................................... 14

*Gray Cary Ware & Freidenrich v. Vigilant Ins.*,
114 Cal. App. 4th 1185 (2004) ......................................................................... 10

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013)...................................................................... 14

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ...................................................................................... 21

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........................................................................................ 6, 25

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Hiscox Ins. Co. v. The Perfect Event, Inc.*,
  2025 WL 2945535 (C.D. Cal. June 17, 2025) ...................................................... 24

*In re A & C Props.*,
  1988 WL 79262 (9th Cir. July 21, 1988) ........................................................... 18

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*,
  309 F.3d 76 (2d Cir. 2002) ................................................................................ 17

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  157 F. Supp. 3d 352 (S.D.N.Y. 2016) ......................................................... 15, 19

*ITT Corp. v. Lee*,
  663 F. App'x 80 (2d Cir. 2016) ......................................................................... 23

*Jackson v. Mayweather*,
  10 Cal. App. 5th 1240 (2017) ...................................................................... 12, 25

*Kapellas v. Kofman*,
  1 Cal. 3d 20 (1969) ........................................................................................... 25

*Krystal Investigations & Sec. Bureau, Inc. v. United Parcel Serv., Inc.*,
  826 N.Y.S.2d 727 (N.Y. App. Div. 2006) ......................................................... 15

*Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*,
  87 F.3d 44 (2d Cir. 1996) .................................................................................. 22

*Lost Lake Holdings LLC v. Town of Forestburgh*,
  208 N.Y.S.3d 314 (2024) .................................................................................. 21

*Mill Fin., LLC v. Gillett*,
  992 N.Y.S.2d 20 (N.Y. App. Div. 2014) ........................................................... 20

*Miller v. Nat'l Broad. Co.*,
  187 Cal. App. 3d 1463 (1986) .............................................................................8

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
  9 Cal. 5th 279 (2020) ........................................................................................ 24

*Nedlloyd Lines B.V. v. Super. Ct.*,
  3 Cal. 4th 459 (1992) ........................................................................................ 14

*Newton v. Thomason*,
  22 F.3d 1455 (9th Cir. 1994) ...............................................................................7

MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................. 21

*Paramax Corp. v. VoIP Supply, LLC*,
  107 N.Y.S.3d 231 (N.Y. App. Div. 2019) ..................................................... 16, 19

*Plaza Home Mortg. v. Ass'n of Certified Mortg. Originators Risk Retention
  Grp.*,
  2025 WL 3102307 (S.D.N.Y. Nov. 6, 2025)................................................... 16, 19

*Porten v. Univ. of S.F.*,
  64 Cal. App. 3d 825 (1976) ................................................................................. 25

*Postlewaite v. McGraw-Hill, Inc.*,
  411 F.3d 63 (2d Cir. 2005)............................................................................ 18, 19

*Pulte Home Corp. v. TIG Ins.*,
  794 F. App'x 587 (9th Cir. 2019) ........................................................................ 13

*Ramirez v. City of Indio*,
  105 Cal. App. 5th 939 (2024) .............................................................................. 15

*Rearden LLC v. TWDC Enters. 18 Corp.*,
  2025 WL 2970564 (N.D. Cal. Oct. 22, 2025) ..................................................... 11

*Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of N.Y.
  Mellon*,
  2014 WL 3858469 (S.D.N.Y. July 30, 2014) ...................................................... 14

*Roberts v. Weight Watchers Int'l, Inc.*,
  217 F. Supp. 3d 742 (S.D.N.Y. 2016) ................................................................. 21

*Royal Hawaiian Orchards, L.P. v. Olson*,
  2015 WL 6039202 (C.D. Cal. Oct. 15, 2015)...................................................... 13

*Russell Publ'g Grp. v. Brown Printing Co.*,
  2014 WL 1329144 (S.D.N.Y. Apr. 3, 2014) ....................................................... 22

*Salustri v. Dell, Inc.*,
  2010 WL 11596554 (C.D. Cal. Apr. 27, 2010) ................................................... 14

*Scottsdale Indem. Co. v. Nat'l Cont'l Ins.*,
  229 Cal. App. 4th 1166 (2014) ........................................................................... 10

viii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Shulman v. Grp. W Prods.*,
  18 Cal. 4th 200 (1998) ................................................................. 25

*Singh v. Amguard Ins. Co.*,
  2016 WL 7469641 (C.D. Cal. Apr. 1, 2016) ................................. 23

*Sipple v. Chronicle Publ'g Co.*,
  154 Cal. App. 3d 1040, 1047 (1984) ............................................ 24

*Soley v. Wasserman*,
  639 F. App'x 670 (2d Cir. 2016) ................................................... 22

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ........................................................ 24

*Teselle v. McLoughlin*,
  173 Cal. App. 4th 156 (2009) ....................................................... 22

*Textron Inc. v. Travelers Cas. & Sur. Co.*,
  45 Cal. App. 5th 733 (2020) ......................................................... 13

*Tyler v. Travelers Com. Ins. Co.*,
  499 F. Supp. 3d 693 (N.D. Cal. 2020) .......................................... 20

*United States v. Lennox Metal Mfg. Co.*,
  225 F.2d 302 (2d Cir. 1955) ......................................................... 16

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ........................................................... 3

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................... 23

*Warner v. Tinder Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015) ........................................ 23

*Wilkins v. Nat'l Broad. Co.*,
  71 Cal. App. 4th 1066 (1999) .......................................................... 7

*Williams v. Apple, Inc.*,
  2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) .............................. 24

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................. 5

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Cal. Civ. Code
 § 1708.85............................................................................................................1
 § 1708.85(a) ......................................................................... 6, 8, 9, 10
 § 1708.85(c)(1)............................................................................... 11
 § 1708.85(c)(2)............................................................................... 11
 § 1708.85(c)(3) ......................................................................... 11, 12
 § 1708.85(c)(4)............................................................................... 12
 § 1708.85(c)(5)............................................................................... 12

**Rules**

Fed. R. Civ. P. 9(b) .................................................................. 22, 23, 24

Fed. R. Civ. P. 12(b)(6)..........................................................................3

N.Y. C.P.L.R. § 213(2) ............................................................................ 23

**Regulations**

Cal. Sen. Judiciary Comm. Rep. on A.B. No. 2643.............................................. 6, 9

**Other Authorities**

Restatement (Second) of Torts § 892...........................................................8

Restatement (Second) of Torts § 892B(3) .....................................................9

Restatement (Second) of Conflict of Laws § 187 .................................................... 13

Restatement (Second) of Conflict of Laws § 188.................................................... 13

Restatement (Second) of Contracts § 202(2) ......................................................... 17

Restatement (Second) of Contracts § 202(5) ......................................................... 17

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

A decade ago, Plaintiff Catherine Corcoran starred in *Terrifier*, an ultra-low-budget horror movie that eventually grew to be an iconic, enduring classic of the genre.  Plaintiff brings this suit to rewrite her *Terrifier* contract, which did not entitle her to profits from the sequels *Terrifier 2* and *3*.  She also brings a legally and factually frivolous claim under California's "revenge porn" statute, California Civil Code Section 1708.85, contesting her most famous scene in *Terrifier* nearly a decade after she filmed it.  Plaintiff distorts the entire purpose of the revenge porn statute, which, on its face, was never intended to apply to theatrical scenes recorded by a film crew for a broadly distributed cinematic release, to which Plaintiff cannot plausibly allege any reasonable expectation of privacy.  Plaintiff's First Amended Complaint (FAC) fails on multiple fronts, as explained below.

*No Revenge Porn.*  Plaintiff cannot plead a revenge porn claim because a commercial film produced under a theatrical contract is not revenge porn by definition.  Plaintiff (1) cannot allege core elements of revenge porn, including that she reasonably thought the scene would remain private and lack of consent; (2) fails to allege any facts supporting her allegations on "information and belief" that Defendants distributed still images of her on set; (3) pleads the applicability of multiple statutory safe harbors; (4) is time-barred by multiple years; and (5) is preempted by the Labor Management Relations Act (LMRA).

*No Breach of Contract.*  Plaintiff's breach of contract claim for "1% of profits from the *Terrifier* series" should be dismissed because she cites no contract that entitles her to such relief.  To the contrary, the plain language of the Mutual Non-Disclosure Agreement (NDA), FAC, Ex. 2, only provides Plaintiff 1% of profits from the release of *Terrifier*—not the entire franchise.  Likewise, the Merchandising Agreement, which followed the NDA and is incorporated by reference into the FAC, only entitles Plaintiff to 1% of merchandise *bearing her*

1

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*likeness* in *Terrifier*, not all *Terrifier* merchandise.  It unambiguously does not extend to *Terrifier 2* or *3*.  Because Plaintiff's alleged breaches lack any basis in her agreements (which actually bely her claims), they must be dismissed.

*No Ancillary Claims.*  Plaintiff's ancillary claims likewise fail.  Her breach of implied covenant, money had and received, accounting, and promissory fraud claims each fail because they merely duplicate her contract claims.  Her claim under California's Unfair Competition Law (UCL) fails because: it cannot apply to entirely out-of-state conduct; it duplicates the contract claims; Plaintiff has adequate remedies at law; it is time-barred; and Plaintiff fails to allege any unlawful, unfair, or fraudulent conduct.  And her invasion of privacy claim is preempted and fails on the elements.

At day's end, *Terrifier* is not revenge porn, and Plaintiff's limited entitlement to royalties for *Terrifier* does not support her sweeping grab for profits across the franchise, several years too late.  Her claims should be dismissed.

## II.    BACKGROUND

## A.    Plaintiff Stars in the Ultra-Low-Budget Indie Movie *Terrifier*.

In 2015, Leone, Falcone, and Dark Age set out to produce a sensational, indie horror movie with "the working title *Terrifier*."  FAC ¶ 18.  They cast Plaintiff to play the brief, 10-minute role of Dawn and, in July 2015—more than 10 years before she filed this action—Plaintiff signed on to the movie.  *Id.* ¶¶ 19–20.  Her agreement comprised two principal documents: a Screen Actors Guild (SAG) Employment of Performer for Ultra Low Budget Film agreement (Performer Agreement) and a Mutual Non-Disclosure Agreement (NDA).  *Id.* ¶¶ 20, 22; *see* ECF Nos. 14-1 (Performer Agmt.), 14-2 (NDA).[1]  Plaintiff negotiated and signed

_____

[1] The FAC incorporates by reference both the Performer Agreement and the NDA (which are attached to the FAC as Exhibits 1 and 2, respectively) and the Merchandising Agreement (which is not attached but supplies the basis of one of Plaintiff's contract breach theories).  *See* RJN §§ I, II.D & Leone Decl., Ex. D

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

both in New York, where she shot *Terrifier*. *See* Performer Agmt. at 1 (listing Plaintiff's address as New York).

Plaintiff entered into the Performer Agreement with Dark Age; no other Defendant is party to the agreement. *See id.* The one-page-long Performer Agreement describes Plaintiff as the "Performer[]" and states that "Producer [Dark Age] obtains all theatrical rights" in *Terrifier*. *Id.* It guarantees Plaintiff five days' work for $100 per day, *id.*, but it says nothing about royalties.

So, "to further compensate her for her work on the film," Dark Age and Plaintiff entered the NDA "[c]oncurrently with the [Performer] Agreement." FAC ¶ 22. The NDA says Plaintiff "will receive 1% of profits from 'Terrifier'" "for a period of two (2) years." NDA at 1, 2. The two-page NDA says nothing more about royalties or other compensation. *See id.*

Moreover, the Performer Agreement expressly incorporated by reference two SAG agreements: (1) "the Independent Producers' Ultra Low Budget Letter Agreement" (ULB Producers Agreement), *see* Performer Agmt. ¶ 2; RJN §§ I, II.B & Leone Decl., Ex. A (ULB Prod. Agmt.), and (2) the "Screen Actors Guild Agreement for Independent Producers of Theatrical Motion Pictures" (Independent Producers Agreement). *See* Performer Agmt. ¶ 3; RJN §§ I, II.B & Leone Decl., Ex. B (Ind. Prod. Agmt.).[2] The ULB Producers Agreement states that "the Producer

---

(Merch. Agmt.); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document "incorporated by reference … if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *see also* FAC ¶¶ 3, 20, 22–23, 24, 50–52, 55, 61, 68, 71 (citing or quoting Performer Agreement, NDA, or Merchandising Agreement). The Court therefore may consider them and their contents for this Motion. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 n.1 (N.D. Cal. 2019) (considering, on Rule 12(b)(6) motion, contract providing basis for breach of contract claim).

[2] The Independent Producers Agreement incorporated by reference the SAG Codified Basic Agreement, as amended in 2014 (SAG CBA). *See* Ind. Prod. Agmt. at 1; RJN §§ I, II.C & Leone Decl., Ex. C (SAG CBA).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

[Dark Age] intends to produce a single motion picture of approximately 90 minutes running time currently entitled 'TERRIFIER,'" ULB Prod. Agmt. at 1, which Dark Age "has the right to exhibit … theatrically." *Id.* § 4.  The Performer Agreement also describes the "Production Title" as "*Terrifier.*"  Performer Agmt. at 1; *see id.* (referring, in the singular, to "the … photoplay").  Nonetheless, Plaintiff says—after neglecting to mention it in her initial Complaint—that "Terrifier" "was understood by all parties to mean and refer also to the brand, trade name and trade dress for the entire *Terrifier* oeuvre, including potential subsequent films." FAC ¶ 22.  The character Dawn likely would not feature in any *Terrifier* sequels since the script called for her to be "sawed in half with a hacksaw." FAC ¶ 19.  Shooting took place in "the fall and winter of 2015." *Id.* ¶ 24.  Plaintiff alleges she agreed to shoot the hacksaw scene with her breasts exposed during filming. *Id.* ¶¶ 25–26.

*Terrifier* premiered at a film festival in October 2016 and showed at the Lincoln Center in New York in 2017. *Id.* ¶ 27.  It was released to theaters on March 15 and 16, 2018; on DVD and Blu-ray on March 27, 2018; and on the streaming service Netflix on September 1, 2018. *Id.*  At this point, Plaintiff alleges she had received no royalties from "the profits generated from [*Terrifier*]." *Id.* ¶ 28.

In August 2019, Plaintiff and Dark Age entered a licensing agreement for certain merchandise from the original *Terrifier* (Merchandising Agreement). *Id.* ¶ 28; *see* RJN §§ I, II.D & Leone Decl., Ex. D (Merch. Agmt.).  Though Plaintiff alleges the Merchandising Agreement broadly entitles her to "1% of the profits from any *Terrifier* related merchandise," FAC ¶ 3, it actually entitles her to 1% of profits from the use of her "name, likeness and visual representation of herself" "solely in connection with the manufacture, sale and distribution of merchandising in connection with the motion picture entitled 'Terrifier.'"  Merch. Agmt. at 1.

**B.**     ***Terrifier 2*** **and** ***3*** **Take Off Without Plaintiff.**

Plaintiff alleges Leone began developing the sequel *Terrifier 2* in 2019, which was released in October 2022.  FAC ¶¶ 29–31.  Plaintiff only appears in

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Terrifier 2* in a still image from an "artistic rendering" based on *Terrifier*, which she granted the producers the right to "re-use." *Id.* ¶ 30. She alleges it grossed about $15 million worldwide. *Id.* ¶¶ 30–31. She says she "began to receive" royalties from Dark Age and Art the Clown in December 2022. *Id.* ¶ 33. She also says the success of *Terrifier 2* encouraged Defendants to re-release *Terrifier* in July 2023, grossing over $400,000. *Id.* ¶ 31. She alleges *Terrifier 3*, which did not feature Plaintiff at all, was released in October 2024, grossing $90.3 million worldwide. *Id.* ¶ 34. In the end, Plaintiff alleges the *Terrifier* series "was an organic, sleeper-hit," *id.* ¶ 27, becoming a "vast success" with a "rabid fan base," *id.* ¶ 35—and "one of the most popular and profitable independent horror film series produced in the last 25 years." *Id.* ¶ 2.

**C.     Plaintiff Attempts to Rewrite Her Contract.**

Plaintiff is not entitled to the significant profits from *Terrifier 2* and *3* because she did not appear in, produce, or negotiate royalties from those movies. Instead, Plaintiff tries to re-cast *Terrifier*—a "feature-length film" in which she agreed to "star[]," FAC ¶¶ 3, 18—as an intimate video she meant to keep private. At the same time, she seeks to re-write her contract from a limited, film-specific agreement to a sweeping profit sharing deal for all profits from the *entire* franchise.

She brings claims for violation of California's revenge porn statute; breach of contract; breach of the implied covenant of good faith; money had and received; an accounting; promissory fraud; violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200; and invasion of privacy.

**III.     LEGAL STANDARD**

To survive a 12(b)(6) motion, a complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts require "more than labels and

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

conclusions[ or] a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. Dismissal should be with prejudice where amendment cannot cure a pleading's deficiencies. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).

## IV.   THE COURT SHOULD DISMISS THE FAC

## A.   Plaintiff's "Revenge Porn" Claim Fails.

Plaintiff grossly distorts California's "revenge porn" statute.  The statute protects "victims of non-consensual distribution of intimate images" because "one-in-ten former intimate partners have threatened to expose their ex by sharing intimate images of their ex online."  Cal. Sen. Judiciary Comm. Rep. on A.B. No. 2643 at 4 (June 17, 2014), http://www.leginfo.ca.gov/pub/13-14/bill/asm/ab_2601-2650/ab_2643_cfa_20140616_163240_sen_comm.html (last visited Jan. 22, 2026). Plaintiff's invocation of this statute in a royalties dispute fails on its face.  The FAC (1) does not plead multiple elements of revenge porn; (2) alleges no facts about the alleged distribution of behind-the-scenes photographs; (3) affirmatively pleads facts that place Defendants' conduct within multiple safe harbor provisions; (4) is time-barred; and (5) is preempted by the LMRA.

### 1.   Plaintiff Does Not Plead Multiple Elements of Revenge Porn.

Plaintiff's allegations negate two elements of revenge porn: (a) a reasonable expectation of privacy; and (b) lack of consent.

#### a.   Plaintiff's Allegations Negate Any Expectation of Privacy.

To start, the FAC contains multiple allegations that negate any plausible pleading that Defendants "knew, or reasonably should have known, that [Plaintiff] had a reasonable expectation" of privacy in shots from one of the most iconic scenes of the *Terrifier* franchise.  Cal. Civ. Code § 1708.85(a).  The reasonableness of a plaintiff's expectation of privacy is an objective inquiry based on the circumstances of the alleged invasion.  *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26, 36–37 (1994) (explaining rule and identifying factors); *see* Cal. Sen.

6

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Judiciary Comm. Rep. on A.B. No. 2643, *supra* (characterizing revenge porn statute as "Invasion of Privacy: Distribution of Sexually Explicit Materials").

Here, Plaintiff's affirmative allegations foreclose any pleading of a reasonable expectation of privacy.  Indeed, Plaintiff concedes that Defendants "cast" Plaintiff to "star[]" as "a character" in a commercial, "feature-length film," for what was expected to be the film's "most iconic and enduring scene," which "called for [Plaintiff] to be nude."  FAC ¶¶ 3, 18–20, 25.  Plaintiff concedes the shoot itself did not occur in a private setting, but on set during principal photography for a theatrical motion picture *with crew and other actors*, *id.* ¶¶ 24–26, some of whom were apparently strangers to her.  *See id.* ¶ 25 (alleging presence of multiple unidentified crew members, Falcone, and another actor in scene).  There is no expectation of privacy where, as here, the plaintiff has no right of "actual control of the premises," nor where the parties fail to "conduct[] themselves as though they were dispensing private information."  *Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1078 (1999).

Further, *after* the film was exhibited publicly and distributed in multiple media and on multiple platforms, FAC ¶¶ 27, Plaintiff signed additional contracts acknowledging that images from the iconic scene would be "re-use[d]," *id.* ¶ 30, "distribut[ed]," and "s[old]."  *Id.* ¶¶ 28, 30, 41; *see* Merch. Agmt. at 1 (contemplating "sales and dissemination" of Plaintiff's likeness).  And she accepted royalty payments from the distribution of the movie, which included that scene.  FAC ¶¶ 33, 35, 68; *see Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994) (privacy claim failed where plaintiff did not object to use of his likeness).

The documents incorporated by reference into the FAC further confirm that Plaintiff did not expect the scene to be private.  She signed the Performer Agreement granting Dark Age "all theatrical rights," Performer Agmt. ¶ 4, and incorporating the ULB Producers Agreement, which also acknowledged Dark Age

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"ha[d] the right to exhibit [*Terrifier*] theatrically." ULB Prod. Agmt. § 4. She also signed the NDA *expecting* that there would be "profits from 'Terrifier.'" NDA at 1.

These allegations negate any inference that Plaintiff reasonably expected that matters filmed on the *Terrifier* set would remain private, and thus impel dismissal of her revenge porn claim from the outset.

### b.    Plaintiff Pleads Her Own Actual and Apparent Consent.

Plaintiff's revenge porn claim also fails because she pleads affirmative facts that demonstrate her consent. *See* Cal. Civ. Code § 1708.85(a). California follows the Restatement (Second) of Torts (1979), *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1482 (1986), which recognizes actual and "apparent" consent. Restatement Torts § 892. "Words or conduct" constitute apparent consent if they "are reasonably understood … to be intended as consent." *Id.* § 892(2).

Here, Plaintiff's own allegations again demonstrate her actual and apparent consent to the distribution of *Terrifier*. Plaintiff signed agreements to perform in the film and expressly granted Dark Age "all theatrical rights," Performer Agmt. ¶ 4, and "the right to exhibit the Picture theatrically," ULB Prod. Agmt. § 3; contemplated "profits" from the film, NDA at 1; consented to perform the scene topless after negotiating to wear underwear, FAC ¶¶ 25, 39 (conceding she "acquiesce[d] to film the nude scene"); signed a SAG reuse agreement for her likeness from *Terrifier* to be used again in *Terrifier 2*, *id.* ¶ 30; and accepted royalty payments for years without objection. *Id.* ¶¶ 33, 35. These factual allegations and incorporated documents negate her conclusory allegation that she "did not provide … consent to the filming, distribution, or commercial exploitation of" the hacksaw scene. *Id.* ¶ 38; *see Cassab v. Duringer L. Grp., PLC.*, 2022 WL 18232571, at *1 (C.D. Cal. Nov. 22, 2022) (on Rule 12(b)(6) motion, "[t]he court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" (citations omitted)). Having repeatedly consented to

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and profited from the filming and distribution of *Terrifier*, Plaintiff perverts the revenge porn statute by invoking its protections nearly a decade after her consent.

Moreover, Plaintiff's specific allegations do not change the analysis.

***No Duress.*** Plaintiff alleges that her "on-set acquiescence" to shoot the hacksaw scene was "coerced." FAC ¶ 39. Coercion, or "duress," can render consent ineffective, Restatement Torts § 892B(3), but conduct typically must be "quite drastic … and … clearly and immediately amount to an overpowering of the will" to constitute duress, such as "force or threats of force." *Id.* § 892B, cmt. j. Plaintiff does not allege any facts meeting this high bar.

In any event, even if she plausibly alleged she did not effectively consent *while on set*, this argument does not bear on her pre-shoot grant of theatrical rights to Dark Age or request for profits, nor does it relate to her post-shoot decisions to sign a re-use agreement or accept royalty payments. That conduct establishes that she consented to the distribution *Terrifier*.

***Consent to Film.*** Plaintiff also claims that she did not consent to the distribution of the hacksaw scene because Defendants did not obtain her "informed written consent to film [her] nude." FAC ¶ 25; *see id.* ¶¶ 21, 40 (same). But even assuming this is true, the revenge porn statute turns on consent to *distribute*, not consent to *film*. Cal. Civ. Code § 1708.85(a) (creating right of action against a defendant who "intentionally *distributes* … [a] film … without … consent"). That makes sense because the statute was intended to prevent nonconsensual *distribution* of private images by former intimate partners, with whom the images may have been made or shared consensually. *See* Cal. Sen. Judiciary Comm. Rep. on A.B. No. 2643, *supra*, at 5 (citing research on former intimate partners threatening to share intimate images). Even if Plaintiff did not initially consent to "filming" the hacksaw scene, FAC ¶¶ 3, 25, Plaintiff has no revenge porn claim because she consented to the "distribut[ion]" as evidenced by the Performer Agreement, NDA, SAG re-use agreement, and royalties.

MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

***Consent to Distribute.***  Plaintiff says she did not consent to "the release of the film," FAC ¶ 40, but, as noted above, her concrete factual allegations contradict this conclusion.  She complains that she did not receive "advanced viewing or final approval of the nude scene," or "the opportunity to provide feedback, to express limitations or to otherwise provide consent to the release of the nude scene," *id.*, but she identifies no authority giving her those rights, let alone importing them into the familiar "consent" standard in the revenge porn statute.

***SAG CBA.***  Last, Plaintiff contends she did not consent to distribution of the hacksaw scene because she did not provide "informed written consent," which she says the SAG CBA requires.  FAC ¶¶ 21, 25, 40.[3]  But the revenge porn statute does not so limit the definition of "consent."  It simply asks whether distribution occurred "without the [plaintiff's] consent."  Cal. Civ. Code § 1708.85(a).  This Court should not "add … words to" a statute that the California legislature omitted, *Scottsdale Indem. Co. v. Nat'l Cont'l Ins.*, 229 Cal. App. 4th 1166, 1172 (2014), or "give the words of a statute a definition 'different from the[ir] plain and direct import.'"  *Gray Cary Ware & Freidenrich v. Vigilant Ins.*, 114 Cal. App. 4th 1185, 1190 (2004) (citation omitted).

Plaintiff does not allege the elements of a revenge porn claim.

### 2.  Plaintiff Does Not Allege Distribution of Any Stills.

Plaintiff's FAC tries to salvage her revenge porn claim by adding allegations, "***on information and belief***," that Defendants distributed "still photographs" of Plaintiff while preparing a body mold, FAC ¶ 24, and "[d]uring filming of the [hacksaw] scene."  *Id.* ¶ 25.[4]  But Plaintiff cannot rely on "information and

---

[3] Defendants dispute any violation of the SAG CBA.  If this Court does not dismiss the revenge porn claim (which it should), Defendants will show with evidence why Plaintiff's claims under the SAG CBA fail, if necessary.

[4] Defendants vigorously dispute the veracity of these allegations, which lack any basis in fact.  Defendants reserve all rights to seek appropriate relief for these baseless allegations at an appropriate time.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

belief"—unsupported by any facts—to allege the core conduct of her claim. *See Twombly*, 550 U.S. at 551–52 (dismissing antitrust claim where core conduct—conspiracy—alleged on information and belief); *Rearden LLC v. TWDC Enters. 18 Corp.*, 2025 WL 2970564, at *3 (N.D. Cal. Oct. 22, 2025) (dismissing where core conduct alleged on information and belief).

### 3. Plaintiff Alleges Multiple Revenge Porn Safe Harbors.

The FAC also expressly alleges facts triggering multiple statutory safe harbors under Section 1708.85, subdivision (c), which provides that "[t]here shall be *no liability* … under any of the following circumstances." Each of independently warrants dismissal of Plaintiff's revenge porn claim.

***Created Pursuant to Agreement (§ 1708.85(c)(1)).*** The Performer Agreement and NDA confirm "[t]he distributed material was created under an agreement by the person appearing in the material for its public use and distribution[.]" Cal. Civ. Code § 1708.85(c)(1). Plaintiff concludes that the film was *not* produced pursuant to agreement because she believes Dark Age failed to comply with the SAG CBA, FAC ¶ 38, but she provides no authority for her position that a breach of the nudity provision in the SAG CBA voids the Performer Agreement or NDA. To the contrary, her contract claims depend on those agreements remaining in effect.

***Permission to Publish (§ 1708.85(c)(2)).*** Many allegations show Plaintiff gave "permission … to publish" *Terrifier*. Cal. Civ. Code § 1708.85(c)(2). She granted "all theatrical rights" in the movie, Performer Agmt. ¶ 4; *see* ULB Prod. Agmt. § 4 (acknowledging Dark Age's "right to" "distribute[]"); she "agreed" to perform "for back-end profits," FAC ¶ 20; she entered post-performance reuse and merchandising agreements, *id.* ¶¶ 28, 30; and she accepted royalties. *Id.* ¶ 33.

***Waiver of Reasonable Expectation of Privacy (§ 1708.85(c)(3)).*** For the reasons provided above, Plaintiff waived any reasonable expectation of privacy,

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Cal. Civ. Code § 1708.85(c)(3), by, among other things, granting Dark Age theatrical rights and filming the scene in front of crew members.

*Matter of Public Concern (§ 1708.85(c)(4)).* The scene is a "matter of public concern," *id.* § 1708.85(c)(4), because it is part of an expressive work of public interest that has gained an international following. *See Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1254 (2017) ("In general, '[a] public issue is implicated if the subject of the statement or activity underlying the claim … was a person or entity in the public eye.'" (citation omitted)).

*Circumstances With No Expectation of Privacy (§ 1708.85(c)(5)).* Plaintiff pleads the scene was filmed in "a public place and under circumstances in which [she] had no reasonable expectation of privacy," Cal. Civ. Code § 1708.85(c)(5)—on set, with crew, during principal photography for a commercial film. FAC ¶ 26.

### 4.    The Revenge Porn Claim Is Time-Barred.

Plaintiff's revenge porn claim independently fails because it is barred by the two-year statute of limitations. *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 852 (E.D. Cal. 2025) (two-year limitations period applies to privacy claims). Plaintiff pleads that *Terrifier* was first distributed in October 2016. FAC ¶ 27. She filed this action on October 26, 2025—approximately nine years later. On its face, the revenge porn claim must be dismissed as untimely.

### 5.    The LMRA Preempts the Revenge Porn Claim.

Plaintiff's revenge porn claim also fails because it is preempted by the LMRA. The LMRA will preempt state law claims if the claim "'is either grounded in the provisions of [a] labor contract or requires interpretation of it,'" in which case "the dispute must be resolved through grievance and arbitration." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) (citation omitted).

Here, Plaintiff's revenge porn claim depends on her interpretation of the SAG CBA's consent requirements for filming a scene with nudity, and whether Dark Age complied with those requirements. *See* FAC ¶¶ 21, 25, 30, 38 (alleging no

12

MOTION TO DISMISS FIRST AMENDED COMPLAINT

"informed written consent" required by SAG CBA); SAG CBA § 43.  Thus, to the extent that the revenge porn claim survives on the merits, this Court should nonetheless dismiss it as preempted by the LMRA, which requires Plaintiff to litigate it through the appropriate SAG procedures.  *See Coles v. Aramark Sports & Ent. Grp.*, 298 F. App'x 670, 671 (9th Cir. 2008) (LMRA preempted claim based on "outrageousness" of conduct where outrageousness depended on terms of collective bargaining agreement; collecting cases).[5]

In short, the revenge porn claim fails.

**B.    Plaintiff's Breach of Contract Claim Fails.**

Plaintiff, in effect, brings two contract claims: one under the NDA and one under the Merchandising Agreement.  *See* FAC ¶ 50 (alleging breach of "these agreements").  Each should be dismissed under applicable New York law.[6]

**1.    New York Law Applies.**

A court sitting in diversity applies the forum state's choice-of-law rules. *Pulte Home Corp. v. TIG Ins.*, 794 F. App'x 587, 589 (9th Cir. 2019).  In California, if a contract lacks a choice-of-law provision, courts apply the "most significant interest" test in Restatement (Second) of Conflict of Laws § 188. *Textron Inc. v. Travelers Cas. & Sur. Co.*, 45 Cal. App. 5th 733, 751 (2020).  Under this test, New York law applies to the Performer Agreement and NDA because New York was the location of (1) contracting, (2) negotiation, (3) performance, (4) the subject matter of the contract, and (5) the domicile of the parties.  *See Royal*

---

[5] Defendants reserve any rights under the SAG CBA or any other agreement deemed part of the parties' agreement, including, if applicable to this dispute, the dispute resolution procedure set out in the arbitration provision.  *See* SAG CBA § 9.

[6] Plaintiff's claims against non-parties to the agreements themselves should be dismissed because she alleges no facts to support her imposition of contractual duties upon non-signatories to the contracts she signed (namely, Art the Clown, Fuzz on the Lens, and Leone and Falcone in their individual capacities).

13

MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Hawaiian Orchards, L.P. v. Olson*, 2015 WL 6039202, at *3 (C.D. Cal. Oct. 15, 2015) (applying foreign law on similar facts).[7]

The Merchandising Agreement, on the other hand, selects New York law to govern the "validity, construction, performance, and breach" of the agreement, Merch. Agmt. at 3 (emphasis removed), so Restatement Conflict Section 187 applies to determine its enforceability. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (1992). New York law applies under Section 187. First, New York has a substantial relationship to the parties because Dark Age (and Plaintiff) was domiciled there, *see* Merch. Agmt. at 1, and, second, Plaintiff cannot show that (a) applying New York law will contravene a fundamental California policy and (b) California has a materially greater interest in this dispute. *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 537 (C.D. Cal. 2013) (explaining burden shifting); *Salustri v. Dell, Inc.*, 2010 WL 11596554, at *7 (C.D. Cal. Apr. 27, 2010) (enforcing choice-of-law agreement because "breach of contract [claims] do not meet the meaning of 'fundamental public policy'").

## 2.    Plaintiff Alleges No Breach of the NDA.

Plaintiff's NDA claim fails because the breach she alleges finds no basis in the NDA's terms. The royalty clause in the NDA simply provides "[t]he 'Second Party' [Plaintiff] will receive 1% of profits from 'Terrifier'" "for a period of two (2) years." NDA at 1. This only entitles her to 1% profits from '*Terrifier*' (i.e., the original film). Nevertheless, Plaintiff alleges that Defendants owe her royalties

---

[7] This analysis applies to Plaintiff's implied covenant, money had and received, and accounting claims, which sound in contract. *See Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of N.Y. Mellon*, 2014 WL 3858469, at *5 (S.D.N.Y. July 30, 2014) (no implied covenant tort); *Amable v. New Sch.*, 551 F. Supp. 3d 299, 319–20 (S.D.N.Y. 2021) (money had and received is "quasi contract[ual]"); *Cadwalader Wickersham & Taft v. Spinale*, 576 N.Y.S.2d 24, 25 (N.Y. App. Div. 1991) (accounting "sounds in contract" because it seeks "to determine the amounts at issue" under NDA and Merchandising Agreement).

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

from all "*Terrifier* related intellectual property," which includes (a) "all motion pictures in the *Terrifier* series"; (b) derivative works such as "all *Terrifier* related books, video games, live events, and other manner of licensing"; and (c) "*Terrifier* related merchandise." FAC ¶ 50. This claim fails.

### a. The Royalty Clause Excludes *Terrifier* Sequels.

First, Plaintiff's NDA-based claim fails because the NDA's royalty clause—executed before *Terrifier 2* and *3* even existed—excludes the *Terrifier* sequels. "[T]he court's general objective should be to 'determine … the intention of the parties … from the language employed.'" *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1164 (2d Cir. 2024). "An unambiguous and clear contract should be enforced according to its terms." *Krystal Investigations & Sec. Bureau, Inc. v. United Parcel Serv., Inc.*, 826 N.Y.S.2d 727, 728 (N.Y. App. Div. 2006); *see also Ramirez v. City of Indio*, 105 Cal. App. 5th 939, 948 (2024) (same).

***Plain Text.*** The plain text of the royalty clause unambiguously refers only to "Terrifier" (in quotation marks) and does not entitle Plaintiff to profits from *Terrifier 2*, *3*, or any future *Terrifier*. The NDA's reference to "Terrifier" literally means *Terrifier* the movie, singular—no other *Terrifier* movie existed when the NDA was executed. The contract does not say "*Terrifier* series," FAC ¶ 50, and "[c]ourts may not 'by construction add … terms.'" *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 362–63 (S.D.N.Y. 2016) (citation omitted), *aff'd*, 850 F. App'x 38 (2d Cir. 2021); *see also Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 636 (9th Cir. 2021) (same).

Plaintiff's expansive reading of "*Terrifier*" would "distort the meaning of [that term] and thereby make a new contract … under the guise of interpreting the writing." *Int'l Techs.*, 157 F. Supp. 3d at 362–63 (rejecting "[p]laintiff's proposed interpretation … that 'all terms and conditions' … applied" meant "that only '*some* terms' applied"); *see Paramax Corp. v. VoIP Supply, LLC*, 107 N.Y.S.3d 231, 235 (N.Y. App. Div. 2019) (dismissing where contract was "not reasonably susceptible

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

of the meaning proffered by plaintiff"); *Blue Stone Ent. LLC v. AGS CJ Corp.*, 2021 WL 918295, at \*15 (S.D.N.Y. Mar. 10, 2021) (same, "refus[ing] to re-write" "the plain meaning of [the] contract"), *aff'd*, 2022 WL 760748 (2d Cir. 2022); *Plaza Home Mortg. v. Ass'n of Certified Mortg. Originators Risk Retention Grp.*, 2025 WL 3102307, at \*4 (S.D.N.Y. Nov. 6, 2025) (same, refusing "to read additional terms into the [contract]").

Furthert, Plaintiff's read is untenable becuase it "would 'produce a result that is absurd[,] … commercially unreasonable[,] … [and] contrary to the reasonable expectations of the parties,'" *Flynn*, 120 F.4th at 1165, by entitling an actor who appeared in a single indie movie to royalties from all future movies in that "series."

***Context.*** Not only does the NDA's text unambiguously foreclose Plaintiff's claim, but so too does "the context of the entire integrated agreement." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (courts "examine[] the context of the entire integrated agreement"); *see United States v. Lennox Metal Mfg. Co.*, 225 F.2d 302, 311 (2d Cir. 1955) ("text should always be read in its context" and with regard to "surrounding circumstances"); *see also Bay Cities Paving & Grading v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (same).

*First*, the parties used the term "Terrifier" to mean a single film multiple other times. Plaintiff alleges the film's "working title [was] *Terrifier*." FAC ¶ 18; *see id.* (describing *Terrifier*, in the singular, as "a feature-length … film"). The Performer Agreement, entered "[c]oncurrently" with the NDA,[8] uses the term

---

[8] Plaintiff alleges the NDA and Performer Agreement are integrated: she entered the NDA "[c]oncurrently with the [Performer] Agreement … to further compensate her for her work on the film." FAC ¶ 22; *see id.* ¶ 20 (Plaintiff "agreed to work for an *extremely* low up front daily rate [Performer Agreement] and to take a percentage of the back-end profits of the film series [NDA]"); *see also* Restatement (Second) of Contracts § 202(2) (1981) ("all writings that are part of the same transaction are interpreted together"). Though the NDA states that it

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"Terrifier" to describe the "Production Title" of the movie—not a movie franchise. Performer Agmt. at 1; *see id.* ¶ 3 (referring, in the singular, to "*the* above referenced photo*play*"). And the ULB Producers Agreement, expressly incorporated into the Performer Agreement, explains that Dark Age "intend[ed] to produce *a single motion picture ... entitled 'TERRIFIER.'*" ULB Prod. Agmt. at 1. The parties' contemporaneous use of the term "Terrifier" to mean a single film strongly suggests they used the term consistently in the NDA. *See* Restatement (Second) of Contracts § 202(5) (1981) (parties' "manifestations of intention … are interpreted as consistent with each other"). Plaintiff alleges no facts that would suggest the parties ascribed two markedly different meanings to the term "Terrifier" in two documents signed on the same day for the same purpose—to make a movie called *Terrifier*.

Plaintiff's FAC tries to save her contract claim with new allegations that Defendants' unspecified "trademark registrations" show they used "Terrifier" to mean "the Terrifier film franchise and related intellectual property." FAC ¶ 22 n.2. But Plaintiff does not disclose that Defendants filed these trademarks between 2018 and 2025—three to 10 years after they negotiated the Performer Agreement and NDA.[9] *See* RJN §§ I, II.E. Also in 2018, the parties entered the Merchandising Agreement, which referred to "the motion picture entitled 'Terrifier,'" Merch. Agmt at 1, showing they understood "Terrifier" to mean a single motion picture. It is no surprise that film producers would trademark the title of even a single film to

"contains the entire agreement between the Parties," this clause is ambiguous because "Agreement" is not defined and the rest of the clause refers to "disclos[ing] information." NDA at 2. Considering extrinsic evidence as permitted to resolve ambiguities, *see Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002), the only plausible conclusion is that the NDA and Performer Agreement are integrated.

[9] The Court can consider the trademark registrations because they are subject to judicial notice as administrative records on a government website. *See* RJN § I.E; *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023) (USPTO records subject to judicial notice; collecting cases).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

prevent its use for *other* "motion picture films" as well as on "[t]ee-shirts[ or] shorts." FAC ¶ 22 n.2. The trademark registrations are irrelevant.

*Second*, the royalty clause is in an agreement guaranteeing $100 per day for five days on a low-budget film. Performer Agmt. at 1. This three-page agreement did not include a perpetual grant of royalties from future, uncontemplated films. *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) ("Contracts must be read … to effect the[ir] general purpose."); *see also In re A & C Props.*, 1988 WL 79262, at *1 (9th Cir. July 21, 1988) (same). This interpretation is consistent with Plaintiff's alleged execution of a "re-use" agreement in 2022, FAC ¶ 30, which confirms Plaintiff's original agreement did not contemplate the sequels.

*Finally*, the NDA expires after two years. NDA at 2. It would be unreasonable to include a two-year time limit on a perpetual profit-sharing agreement encompassing an unknown number of future sequels. (By contrast, the Merchandising Agreement, which does afford Plaintiff royalties for some merchandise, is "a perpetual license." Merch. Agmt. § 1(c).)

### b.  The Royalty Clause Excludes Derivative Works.

Plaintiff's NDA-based contract claim also fails because the royalty clause does not stretch to derivative works such as "all *Terrifier* related books, video games, live events, and other manner of licensing." FAC ¶ 50. As stated above, "Terrifier" means *Terrifier* the movie; the contract does not say "*Terrifier* related intellectual property," let alone "books, video games, [or] live events." *Id.* "[C]ourts may not by 'construction add … terms.'" *Int'l Techs.*, 157 F. Supp. 3d at 362–63. Plus, entitling Plaintiff to share in profits from a limitless catalog of future derivative works with which she has no involvement "would 'produce a result that is absurd[,] … commercially unreasonable[,] … [and] contrary to the reasonable expectations of the parties.'" *Flynn*, 120 F.4th at 1165. Again, it defies logic to suggest an agreement governing profit-sharing from any future derivative works would include a two-year limitation, or that the agreement would consist of a single

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

sentence in a three-page form contract otherwise guaranteeing nothing more than five days' shooting at $100 per day. *See Postlewaite*, 411 F.3d at 67.

### c.    The Royalty Clause Excludes Merchandise.

Last, Plaintiff alleges she is entitled to "1% of all net sales of *Terrifier* related merchandise," FAC ¶ 50, though the FAC does not specify whether she derives this right from the NDA or the Merchandising Agreement.  Ultimately, she cannot derive it from the NDA because the NDA unambiguously does not entitle her to a percent of merchandising proceeds for the reasons stated above. *See* §§ IV.B.2.a, b.

### 3.    Plaintiff Alleges No Breach of the Merchandising Agreement.

Nor does Plaintiff allege a breach of the Merchandising Agreement.  She appears to allege Defendants breached the Merchandising Agreement by failing to pay her "1% of all net sales of *Terrifier* related merchandise," FAC ¶ 50; *see id.* ¶ 28 (similar), though she does not quote the agreement directly.  But the Merchandising Agreement, incorporated by reference into the FAC, *see supra* n.1, plainly and unambiguously entitles Plaintiff only to 1% "of all … net sales of Merchandising *bearing [Plaintiff's]*" "*name, likeness, voice, and visual representation*."  Merch. Agmt. at 1 & § 2(a).  Plaintiff's breach theory stretches well past this narrow right and should be dismissed. *See Paramax*, 107 N.Y.S.3d at 235; *Blue Stone*, 2021 WL 918295, at *15; *Plaza Home*, 2025 WL 3102307, at *4.

Finally, Plaintiff is not clear whether she believes the Merchandising Agreement entitles her to profits from merchandise from the entire franchise.  But the Merchandising Agreement *is clear* that it applies only to merchandise from the "the motion picture entitled 'Terrifier,'" Merch. Agmt. at 1.  Any claim to the contrary fails.

## C.    Plaintiff's Remaining Claims Fail.

### 1.    No Breach of Implied Covenant.

Plaintiff's implied covenant claim fails because it (a) duplicates the contract claim and (b) seeks to add to and contradict unambiguous contract language.

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*First*, an implied covenant claim fails "[w]here [it] arises from the same facts and seeks the same damages as a breach of contract claim." *Mill Fin., LLC v. Gillett*, 992 N.Y.S.2d 20, 24 (N.Y. App. Div. 2014); *see also Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 702 (N.D. Cal. 2020) (same).  That is the case here, where Plaintiff alleges Defendants' failure to pay her royalties due under the contracts violated the implied covenant.  Indeed, the contractual obligations she contends are owed under the NDA and Merchandising Agreement are nearly identical to the obligations she contends are owed to her under the implied covenant.  *Compare* FAC ¶¶ 50 & 53 (alleging contract breaches and seeking money damages), *with id.* ¶ 61 & 63 (outlining same for implied covenant claim).

Plaintiff's additional allegations—sporadic payments, cryptic memos, lack of accounting, and alleged improper accounting, *id.* ¶ 62—all arise from the same obligations in the NDA and Merchandising Agreement, but seek to augment and contradict those terms with obligations that do not exist.  These allegations cannot support an implied covenant claim.  *See Mill Fin.*, 992 N.Y.S. at 24–25 (dismissing implied covenant claim despite some distinct facts where "the only damages flowing from the alleged [breach of implied covenant] [were] from the [alleged contract breach]"); *see also Dorros v. JPMorgan Chase Bank, N.A.*, 2012 WL 13005961, at *2 (C.D. Cal. June 20, 2012) (same).

*Second*, a plaintiff cannot invoke breach of the implied covenant to create new or contradictory obligations to those owed under the contract.  *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 752 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017); *see also Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000) (same).  But Plaintiff seeks to do exactly this by demanding 1% of all profits "generated from the exploitation of the *Terrifier* related intellectual property" as well as "1% all net sales of *Terrifier* related merchandise."  FAC ¶ 61.  As explained above, the plain language of both the NDA and the Merchandising Agreement forecloses this claim.  *See Roberts*, 217 F. Supp. 3d at 752.

20

MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## 2.   No Money Had and Received.

"[W]here a valid contract exists between the parties regarding the issue at dispute, a quasi-contractual theory, such as money had and received, cannot be maintained." *Amable v. New Sch.*, 551 F. Supp. 3d 299, 319–20 (S.D.N.Y. 2021) (collecting cases); *see also Coldwell Banker Real Est. LLC v. New All. Props.*, 2017 WL 5635023, at *4 (C.D. Cal. June 15, 2017) (same, citing *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).  Plaintiff's money had and received claim merely multiplies her contract theory because the only reason that "she is owed" money is her contracts; it thus fails.  *See* FAC ¶¶ 52, 65.

## 3.   Not Entitled to an Accounting.

To obtain an accounting, Plaintiff must show "a fiduciary or confidential relationship, money entrusted to the defendant imposing the burden of an accounting, the absence of a legal remedy, and in some cases a demand and refusal." *Lost Lake Holdings LLC v. Town of Forestburgh*, 208 N.Y.S.3d 314, 318, (2024); *see also Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (similar).  Here, Plaintiff alleges none.

*First*, Plaintiff alleges only a plain contractual relationship with Defendants, *see* FAC ¶ 71, not that any Defendant is her agent or fiduciary.  *See Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (affirming dismissal on this basis).  *Second*, Plaintiff did not entrust money to Defendants; she alleges they withheld money earned from other sources.  *Third*, Plaintiff has an adequate remedy at law (her contracts).  *See Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) (affirming dismissal of accounting claim where plaintiff failed to demonstrate adequate remedy at law).  In fact, the Merchandising Agreement provides for its own accounting methods.  Merch. Agmt. § 2(b).  No common law accounting claim can lie on these facts.

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 4.    No Promissory Fraud.

Plaintiff's promissory fraud claim fails because it is (a) duplicative of the contract claim, (b) too imprecise for Rule 9(b), and (c) time-barred.

*First*, "[i]t is black letter law in New York[10] that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Russell Publ'g Grp. v. Brown Printing Co.*, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014). That is the case here, where Plaintiff's only alleged "fraud" is that Defendants "fraudulently represented … that they intended to comply with the terms of their agreement" with Plaintiff. FAC ¶ 55; *see id.* ¶ 56 (alleging Defendants "never intended to honor or comply with the terms of their agreement"). This is the same commitment she alleges for her contract claims, *see id.* ¶ 50, so promissory fraud does not lie. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996) (false statements about "intent to perform under the contract" insufficient for promissory fraud); *see also Singh v. Amguard Ins. Co.*, 2016 WL 7469641, at *3 (C.D. Cal. Apr. 1, 2016) (same).

*Second*, the fraud claim falls short of Rule 9(b)'s pleading requirements. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (Rule 9(b) requires "who, what, when, where, and how" of misrepresentation). Plaintiff alleges only that she contracted with "Dark Age" for the Performer Agreement and NDA, FAC ¶¶ 20, 22, and "Leone" for the Merchandising Agreement. *Id.* ¶ 28. This is not enough to plead fraud (especially against the other Defendants).

*Third*, the promissory fraud claim is time-barred. *See ITT Corp. v. Lee*, 663 F. App'x 80, 85 (2d Cir. 2016) (fraud subject to six-year limit if incidental to

---

[10] New York law applies to the promissory fraud claim because the alleged misrepresentations were made and received in New York and Plaintiff's reliance occurred in New York. *See Faconnable Casa v. A. Joffe USA, Inc.*, 2009 WL 10675119, at *5 (C.D. Cal. Sept. 22, 2009) (when "actions in reliance on the alleged misrepresentations take place in the same state as the state where the alleged misrepresentations were made and received, the local law of that state" applies).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

contract claim); N.Y. C.P.L.R. § 213(2) (limitations period for contract claim). This limitations period bars Plaintiff's promissory fraud claim related to both the NDA, which was signed in 2015, NDA at 2, and the Merchandising Agreement, which was signed on August 1, 2019. *See ITT*, 663 F. App'x at 85.

### 5.    No UCL Claim.

Plaintiff alleges Defendants violated the UCL by (1) "failing to obtain … consent to film any nude scenes and images with" Plaintiff and (2) "fail[ing] to pay [Plaintiff] the amounts that she was and is owed pursuant to her contract[s]." FAC ¶ 68. This claim fails for at least five reasons.

*First*, the UCL does not apply to conduct occurring outside of California. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015). Defendants and Plaintiff negotiated her contracts in New York and shot *Terrifier* in New York. Defendants also "failed" to pay royalties from New York or New Jersey. *See* FAC ¶¶ 7–11. Plaintiff's UCL claim is extraterritorial and should be dismissed.

*Second*, to the extent Plaintiff's UCL claim is premised on a "fail[ure] to pay" royalties "pursuant to her contract[s]," FAC ¶ 68, it is subject to dismissal as duplicative of the contract claim. *Hiscox Ins. Co. v. The Perfect Event, Inc.*, 2025 WL 2945535, at *9–10 (C.D. Cal. June 17, 2025) (Birotte, J.); *Catena v. Cap. Records, LLC*, 2012 WL 12942740, at *7 (C.D. Cal. 2012) (plaintiff must plead more than "a 'garden-variety' breach of contract").

*Third*, and relatedly, the UCL claim fails because Plaintiff has adequate remedies at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020) (federal courts' equitable jurisdiction limited to cases without adequate remedy at law). Defendants' alleged failure to pay royalties is the same conduct for which Plaintiff seeks damages under her contract claims, confirming the adequacy of her contract remedy. *Compare* FAC ¶ 58, *with id.* ¶¶ 40, 43; *see Williams v. Apple, Inc.*, 2020 WL 6743911, at *2, 10 (N.D. Cal. Nov. 17, 2020) (no UCL claim where plaintiff seeks compensatory damages from same facts).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Fourth*, the UCL claim is time-barred.  UCL claims have a four-year limitations period.  *Aryeh v. Canon Bus. Sols.*, 55 Cal. 4th 1185, 1192 (2013).  Here, plaintiff alleges the nonconsensual filming took place in 2015, FAC ¶¶ 24, 68, making any claim based on "failing to obtain … consent to film" six years too late.

*Fifth*, Plaintiff fails to allege facts to support a UCL claim.  She alleges no unlawful or unfair conduct because it is neither unlawful nor unfair to shoot a scene with an actress's consent.  *See Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 303 & n.10 (2020) (identifying tests for "unfairness").  Further, Plaintiff alleges no fraudulent claim because she alleges no false or misleading statement, let alone what is required under Rule 9(b)—only that Defendants failed to perform contractually.  *See supra* § IV.C.2.

### 6.      No Invasion of Privacy.

***Preempted.***  The LMRA preempts Plaintiff's invasion of privacy claim because she bases it on whether Defendants complied with the SAG CBA's "consent requirements."  *See supra*, § IV.A.5; FAC ¶¶ 21, 25, 76.

***Elements.***  To plead invasion of privacy for public disclosure of private facts, Plaintiff must allege "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern."  *Shulman v. Grp. W Prods.*, 18 Cal. 4th 200, 214 (1998).  She does not.

*First*, Plaintiff's allegations regarding "still photographs" cannot support the claim because she does not plead dissemination "to the public in general or to a large number of persons."  *Porten v. Univ. of S.F.*, 64 Cal. App. 3d 825, 828 (1976).

*Second*, Plaintiff's participation and appearance in a widely released commercial film is not "private" because it "relates to matters which the plaintiff leaves open to the public eye."  *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047 (1984).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Third*, an actress who voluntarily agreed to star in a film and perform nude cannot plausibly claim the depiction is "highly offensive to a reasonable person." *Hill*, 7 Cal. 4th at 26; *Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d 146, 162 (1990) ("extent to which the person … voluntarily entered into the public sphere" is "relevant to whether an intrusion is 'highly offensive'").

*Fourth*, California courts have long recognized the public interest in issues pertaining to matters of entertainment and celebrities, like Plaintiff, who "voluntarily acceded to a position of public notoriety." *Kapellas v. Kofman*, 1 Cal. 3d 20, 36 (1969); *see Jackson*, 10 Cal. App. 5th at 1257–58 ("actors … have to some extent lost the right of privacy").

## V.      CONCLUSION

The Court should dismiss the FAC with prejudice.

DATED: January 23, 2026

DAVIS WRIGHT TREMAINE LLP
ALEXANDER F. PORTER
NICOLE S. PHILLIS
SANCHO ACCORSI
FELIX MURPHET

By:   s/ *Alexander F. Porter*
      Alexander F. Porter
Attorneys for Defendants
DARK AGE CINEMA, LLC; ART
THE CLOWN, LLC; FUZZ ON THE
LENS PRODUCTIONS, LLC; PHIL
FALCONE; DAMIEN LEONE

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

25
MOTION TO DISMISS FIRST AMENDED COMPLAINT