ALEXANDER F. PORTER (State Bar No. 258597)
  alexporter@dwt.com
NICOLE S. PHILLIS (State Bar No. 291266)
  nicolephillis@dwt.com
SANCHO ACCORSI (State Bar No. 329413)
  sanchoaccorsi@dwt.com
FELIX MURPHET (State Bar No. 354456)
  felixmurphet@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
DARK AGE CINEMA, LLC; ART THE
CLOWN, LLC; FUZZ ON THE LENS
PRODUCTIONS, LLC; PHIL FALCONE;
DAMIEN LEONE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CATHERINE CORCORAN, an individual,<br><br>             Plaintiff,<br><br>    vs.<br><br>DARK AGE CINEMA, LLC, a New York limited liability company; ART THE CLOWN, LLC, a New Jersey limited liability company; FUZZ ON THE LENS PRODUCTIONS, LLC, a New York limited liability company; PHIL FALCONE, an individual; DAMIEN LEONE, an individual,<br><br>             Defendants. | Case No. **2:25-cv-10284**<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:       March 13, 2026<br>Time:       10:00 a.m.<br>Courtroom: 7B<br><br>Assigned to the Hon. André Birotte, Jr.<br><br>Action Filed: October 26, 2025 |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW .......................... 1

A.   Plaintiff's "Revenge Porn" Claim Fails. ........................................ 1

1.   Plaintiff Does Not Plead Multiple Elements of Revenge Porn. ............................................................................. 1

a.   Plaintiff Does Not Allege Distribution of Any Photographs. .................................................... 1

b.   Plaintiff Does Not Plausibly Allege Expectation of Privacy. ............................................ 3

c.   Plaintiff Does Not Plausibly Allege Lack of Consent. ........................................................ 5

3.   Plaintiff Alleges Multiple Revenge Porn Safe Harbors. ............ 6

4.   The Revenge Porn Claim Is Time-Barred. ............................... 8

5.   The LMRA Preempts the Revenge Porn Claim. ....................... 8

B.   Plaintiff's Breach of Contract Claim Fails. ................................... 9

1.   New York Law Applies. ........................................................... 9

2.   Plaintiff Alleges No Breach of the NDA. ................................. 9

a.   The Royalty Clause Excludes *Terrifier* Sequels. ............. 9

b.   The Royalty Clause Excludes Derivative Works and Merchandise. ................................. 12

C.   Plaintiff's Remaining Claims Fail. ............................................... 13

1.   No Breach of Implied Covenant. ............................................. 13

2.   No Money Had and Received. ................................................. 13

3.   Not Entitled to an Accounting. ................................................ 14

4.   No Promissory Fraud. ............................................................. 14

5.   No UCL Claim. ....................................................................... 14

6.   No Invasion of Privacy Claim. ................................................ 15

D.   No Leave to Amend. ..................................................................... 15

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

III.    CONCLUSION ............................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**CASES**

*Ascon Props., Inc. v. Mobil Oil Co.,*
    866 F.2d 1149 (9th Cir. 1989) .............................................................. 15

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.,*
    2020 WL 1877707 (N.D. Cal. Apr. 15, 2020).......................................3

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................3

*Brodeur v. Atlas Ent., Inc.,*
    248 Cal. App. 4th 665 (2016) ...............................................................7

*Concha v. London,*
    62 F.3d 1493 (9th Cir. 1995). ...............................................................2

*D.A. ex rel. Wilson v. McKesson Corp.*
    2014 WL 202738 (E.D. Cal. Jan. 17, 2014) ........................................2

*Dalkilic v. Titan Corp.,*
    516 F. Supp. 2d 1177 (S.D. Cal. 2007)..................................................9

*Detroit Tigers, Inc. v. Ignite Sports Media, LLC,*
    203 F. Supp. 2d 789 (E.D. Mich. 2002)............................................. 13

*Hammett v. Sherman,*
    2022 WL 4793495 (S.D. Cal. Sept. 30, 2022)....................................15

*Hicks v. PGA Tour, Inc.,*
    897 F.3d 1109 (9th Cir. 2018) ............................................................ 11

*Hoffman v. Life Ins. Co. of the Sw.,*
    740 F. Supp. 3d 918 (N.D. Cal. 2024) ................................................15

*In re Apple Data Priv. Litig.,*
    2026 WL 146025 (N.D. Cal. Jan. 20, 2026)........................................3

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................4

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ...................................................................................4

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ......................................................................3

*L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010)...................................................................................10

*MAT Movies & TV Prods. GmbH & Co. Project IV KG v. RHI Ent. Distrib., LLC*,
   752 F. Supp. 2d 373 (S.D.N.Y. 2010) .....................................................................13

*Michaels v. Internet Ent. Grp, Inc.*,
   5 F. Supp. 2d 823 (C.D. Cal. 1998) ....................................................................4, 15

*Patterson v. Am. Woodmark Corp.*,
   2020 WL 7222808 (C.D. Cal. Sept. 15, 2020) ........................................................15

*Pioneer Electronics, Inc. v. Sup.Ct. of L.A.*,
   40 Cal. 4th 360 (2007) ..........................................................................................3

*Postlewaite v. McGraw-Hill, Inc.*,
   411 F.3d 63 (2d Cir. 2005)....................................................................................12

*Rosenthal v. Quadriga Art, Inc.*,
   69 A.D.3d 504 (App. Div. 1st Dept, 2010) (Saxe, J., concurring) ...................................10

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015). ........................................................................................12

*Schering Corp. v. Home Ins. Co.*,
   712 F.2d 4 (2d Cir. 1983)................................................................................10, 11

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078 (9th Cir. 2002) ................................................................................4

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ..................................................................................2

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
   14 Cal. App. 4th 637 (1993) ...................................................................................9

*Tamkin v. CBS Broad., Inc.*,
   193 Cal. App. 4th 133 (2011) ..................................................................................7

iv

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Urban v. Tesla,*
    698 F. Supp. 3d 1124 (N.D. Cal. 2023) .................................................9

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.,*
    1 N.Y.3d 470 (2004) ....................................................................... 12

*Whittlestone, Inc. v. Handi-Craft Co.,*
    618 F.3d 970 (9th Cir. 2010) .......................................................... 11

**STATUTES**

Cal. Civ. Code
    § 1708.85(a) ............................................................... 3, 4, 5
    § 1708.85(c)(5).............................................................................7

SAG CBA § 43(D). ..............................................................................5

**RULES**

Fed. R. Civ. P. 12(b)(6)......................................................... 11

**TREATISES**

Restatement (Second) of Conflict of Laws, § 188 ......................9

Restatement (Second) of Torts § 892B(3) ...............................5

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff performed in the ultra-low budget film *Terrifier* 11 years ago.  The movie was released publicly in 2017.  Plaintiff now claims that movie is "revenge porn" because she appears topless in one scene.  Because no court has ever sustained a revenge porn claim based on the distribution of a theatrical motion picture in which the plaintiff agreed to act, Plaintiff's Opposition shifts focus to her factually unsubstantiated allegations that Defendants distributed behind-the-scenes photos of Plaintiff.  But she pleads no facts supporting her speculation that those pictures—even if they were taken—were ever distributed.

Plaintiff cannot salvage the remainder of her revenge porn claim because the FAC fails to plausibly allege that, as an actress, she had any expectation of privacy or that she did not consent to the scene.  Plaintiff asks the Court to impose a "written consent" requirement, but there is no such requirement in the statute.  The claim also fails because she alleges multiple safe harbors, it is time-barred, and the Labor Management Relations Act (LMRA) preempts it.

Furthermore, Plaintiff's attempt to rewrite the unambiguously clear terms of the NDA falls flat, and Plaintiff's ancillary claims fail for numerous reasons.  The Court should grant Defendants' Motion and dismiss the FAC with prejudice.

### II.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

#### A.    Plaintiff's "Revenge Porn" Claim Fails.

##### 1.    Plaintiff Does Not Plead Multiple Elements of Revenge Porn.

###### a.    Plaintiff Does Not Allege Distribution of Any Photographs.

The Opposition pivots from the main theory in the FAC—that Defendants' distribution of the hacksaw scene in *Terrifier* is revenge porn—to instead emphasize her speculation, "on information and belief," that Defendants distributed unidentified behind-the-scenes photos purportedly taken by the director and crew, on set, ***over a decade ago***.  This does not save her claim.  *See* MTD 10:19–11:5.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1      Most critically, Plaintiff has not—and by her own admission, cannot—allege

2  any facts showing the heart of a revenge porn claim: distribution. Her "still

3  images" theory rests on allegations "upon information and belief" that Defendants

4  "distributed and continue to distribute" unspecified photographs. FAC ¶ 24. But

5  Plaintiff's Opposition repeatedly concedes ***she does not know whether the still***

6  ***images were ever distributed***. *See* Opp. 12:2–3, 30 n.22. Those admissions are

7  fatal. Plaintiff does not address Defendants' authority holding that the central

8  conduct of a claim may not be pleaded on information and belief, *see* MTD 11:1–5,

9  and her cited authority is inapposite. *See* Opp. at 11:11–23. *Soo Park v. Thompson*

10  allowed information-and-belief pleading only "in light of the additional facts

11  alleged" making the misconduct plausible. 851 F.3d 910, 928 (9th Cir. 2017).

12  *Concha v. London* did not involve information-and-belief pleading at all. 62 F.3d

13  1493, 1503 (9th Cir. 1995). And *D.A. ex rel. Wilson v. McKesson Corp.* applied a

14  California rule that fraudulent joinder is inapplicable unless a plaintiff has

15  "absolutely no possibility" of establishing a claim, not Rule 12(b)(6)'s plausibility

16  standard. 2014 WL 202738, at *3 (E.D. Cal. Jan. 17, 2014).

17      Plaintiff says she can plead distribution on information and belief because

18  evidence of "distribut[ion] is … uniquely within the possession of [D]efendants."

19  Opp. 11:18–19. Not so. The heart of a revenge porn claim is that the defendant

20  distributed the image ***to someone else***, so the distribution would be known by other

21  people. Defendants know of no revenge porn case where the Plaintiff did not know

22  whether the material had been distributed. The still image theory fails not because

23  it lacks details about "when, how, or to whom" distribution occurred, Opp. 11:18; it

24  lacks a factual basis to infer distribution at all.

25      Plaintiff contends that "[i]t is reasonable … to infer that these images were

26  shared and distributed" based on the unsupported claim that "numerous … nude

27  images were taken." Opp. 11:24–12:3. But allowing a plaintiff to allege that,

28  because nude image were allegedly taken while making a film, she can ***infer***

"revenge porn" distribution within the limitations period ten years later would gut the distribution element of the statute. *Twombly* decisively forecloses such pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551–52 (2007); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (dismissing copyright infringement claim based on "information and belief" allegation defendant "continu[ed] to make and distribute unauthorized copies"). Plaintiff fails to allege distribution of any still photographs and the claim should be dismissed.

### b.    Plaintiff Does Not Plausibly Allege Expectation of Privacy.

The crux of Plaintiff's revenge porn claim as alleged in the FAC is that Defendants' distribution of *Terrifier* is revenge porn.[1] But Plaintiff fails to plausibly allege that Defendants "knew, or reasonably should have known, that [Plaintiff] had a reasonable expectation," Cal. Civ. Code § 1708.85(a), that *Terrifier* (or pictures taken on set) was private. *See* MTD 6:20–8:5. Rather, Plaintiff alleges she "starred" in a commercial "feature-length film['s]" "most iconic and enduring scene," signed a re-use agreement, and accepted royalties. *See* MTD 7:3–23.

Plaintiff first responds that reasonable expectation of privacy is a "fact intensive inquiry" inappropriate at the pleading stage. Opp. 12:18–19. But where the facts "show no reasonable expectation of privacy …, the question of invasion may be adjudicated as a matter of law." *Pioneer Electronics, Inc. v. Sup.Ct. of L.A.*, 40 Cal. 4th 360, 370 (2007); *see In re Apple Data Priv. Litig.*, 2026 WL 146025, at *10 (N.D. Cal. Jan. 20, 2026) (dismissing where "the Court need only reach … whether Plaintiffs have a reasonable expectation of privacy"). Plaintiff's cases do not prove otherwise. Two address the *offensiveness of the intrusion*, a separate element of invasion of privacy (not at issue here). *See Katz-Lacabe v. Oracle Am.*,

---

[1] Plaintiffs' allegations negate any expectation of privacy over both the alleged "still images" and hacksaw scene insofar as both allegedly were taken **on set**, in front of a film crew, while filming the most iconic scene in the film. FAC ¶¶ 24–26.

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Inc.*, 668 F. Supp. 3d 928, 942–43 (N.D. Cal. 2023); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). The third, *In re Facebook, Inc. Internet Tracking Litig.*, held that it was not unreasonable as a matter of law to expect that Facebook would not track users' "sensitive" browsing history across the internet. 956 F.3d 589, 602–06 (9th Cir. 2020). All three involved surreptitious collection of internet users' data and are worlds apart from the expectations of an actor filming a movie for public exhibition.

Plaintiff next argues that, though she performed topless for 10 hours in what she calls the film's "most iconic and enduring scene" after being told the scene involved nudity, FAC ¶¶ 19, 25–26, "the film could have been edited" to exclude nudity. Opp. 14:7–9. Even if post-production *could* have somehow omitted the filmed nudity, it was not objectively reasonable to expect that no nudity would appear in the final cut. Plaintiff alleges no facts plausibly showing that Defendants "knew, or reasonably should have known," Cal. Civ. Code § 1708.85(a), of such an idiosyncratic expectation. Plaintiff cites *Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002), to argue Defendants knew her expectations. But in *Solano*, the plaintiff challenged Playgirl magazine's unauthorized use of his image on the magazine cover even though he had not posed for the magazine. *Id.* Here, Plaintiff concedes she performed in the hacksaw scene. *See* MTD 7:3–8:2.

Plaintiff also says her grant of "all theatrical rights" is irrelevant because it pre-dated filming. Opp. 14:17–21. But granting all theatrical rights necessarily informs what expectations are reasonable: Plaintiff knew she was performing in a motion picture that Defendants—not she—would control and distribute theatrically.

Finally, Plaintiff contends that the presence of cast and crew does not defeat a reasonable expectation of privacy. Opp. 14:22–28. But a scene filmed on set, in front of multiple people, for a feature film is materially less private than an intimate recording made for personal use. *See Michaels v. Internet Ent. Grp, Inc.*, 5 F. Supp.

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2d 823, 840 (C.D. Cal. 1998) (distinguishing intimate tape from plaintiff actress's nude appearances in "movies and publicly distributed videotapes").

Plaintiff fails to plausibly allege that Defendants knew or should have known she had a reasonable expectation of privacy in her work on *Terrifier*.

### c. Plaintiff Does Not Plausibly Allege Lack of Consent.

Defendants also demonstrated that Plaintiff pleads facts showing her consent to distribution. *See* MTD 8:6–10:18; Cal. Civ. Code § 1708.85(a). Plaintiff alleges she agreed to perform in the film, granted "all theatrical rights," negotiated the manner of performance, signed a reuse agreement, and accepted royalty payments for years. *See* MTD 8:13–21. Plaintiff fails to show otherwise in her Opposition.

***No Duress.*** The Motion showed that Plaintiff's conclusory allegations of "coercion," or duress, did not render her consent ineffective because they did not approach the high bar set by Restatement (Second) of Torts § 892B(3). MTD 9:4–14. Plaintiff admits that she consented to distribution of the hacksaw scene, but claims this was due to "unequal bargaining pressure." *See* Opp. 13:16. But there is no "unequal bargaining pressure" exception in the statute and Plaintiff fails to allege facts supporting the assertion that "extremely low budget" film producers had unequal power over the "only established talent signed on to the film," FAC ¶¶ 18, 20, much less facts that would meet the high bar for legal duress. *See* MTD 15:4–9.

***Consent to Film.*** Even assuming that Plaintiff did not consent to "film" the hacksaw scene because she did not provide "informed written consent," that is irrelevant because the revenge porn claim hinges on consent to "distribution." *See* MTD 9:15–28. Plaintiff responds that the SAG CBA requires Defendants to obtain "informed written consent" to "legally release the film." Opp. 13 n.6. But the CBA says the opposite. Its nudity provision expressly provides that "consent may not be withdrawn as to film already photographed." SAG CBA § 43(D).

***Consent to Distribute.*** The FAC provides no basis for Plaintiff's conclusion that she had "advanced viewing or final approval" rights over, or the right "to

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

provide feedback" on, a scene in a film Defendants produced. *See* MTD 10:1–7.
The Opposition still identifies no authority—contractual or otherwise—granting her
these rights. Plaintiff's related assertion that she "was not aware of the extent of
nudity that would be included in the film as released until after the fact," Opp. 8:8–
9, fares no better. A performer who knowingly filmed a topless scene for a
theatrical motion picture does not withhold consent to distribution merely because
she lacked advanced viewing or editorial control.

     ***SAG CBA.*** Defendants also explained why the Court should reject Plaintiff's
attempt to import the SAG CBA's written consent standard into Section 1708.85.
MTD 10:8–17. Plaintiff responds that she "does not claim that § 1708.85(b)
requires the plaintiff's informed written consent prior to filming or distribution."
Opp. 13 n.6. But in the very next sentence, and throughout her Opposition, she
argues the opposite: that Defendants lacked consent *because* they did not obtain
informed written consent. *Id.*; *see also id.* at 8:1–3 (alleging Defendants "filmed
Corcoran topless for her defining scene without obtaining the informed written
consent required by the [CBA]"). Ultimately, Plaintiff's position is clear: she
believes she did not consent because she did not do so ***in writing***, as she contends
the SAG CBA required. But the statute does not require "written consent." The
Court should reject her attempt to graft a collective bargaining rule onto the statute
because, under Plaintiff's theory, performers in SAG films could sue for revenge
porn even where they provide oral consent—as Plaintiff concedes she did here, *see*
FAC ¶ 39 (conceding Plaintiff "acquiesce[d] to film the nude scene")—while actors
in non-SAG films could not. Section 1708.85 does not slice consent so thinly.

     **3.**     **Plaintiff Alleges Multiple Revenge Porn Safe Harbors.**

     The entire revenge porn claim also fails because it falls squarely within
multiple statutory safe harbors. *See* MTD 11:6–12:12.

     ***Created Pursuant to Agreement.*** Plaintiff concedes her performance was
"created under an agreement," MTD 11:11–19, namely, the Performer Agreement

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and NDA.  Opp. 16:2–3 ("[Plaintiff] had an agreement to appear … in *Terrifier*.").
She argues instead that "there was *never* an agreement that Defendants could
distribute *images* of her nude body."  Opp. 16:3–4.  This argument appears to
concede that the *hacksaw scene* falls under this safe harbor.  And it misses the
point.  The safe harbor asks whether "the material was *created* under an
agreement"—not whether it was distributed under an agreement.

     ***Permission to Publish and Privacy Waiver.***  Plaintiff does not grapple with
her express grant of "all theatrical rights" to Defendants, nor her repeated consent to
*reuse* of her likeness in *Terrifier* for over a decade after it was filmed.  *See* MTD
11:20–12:2; FAC ¶ 30.  She also accepted royalties for the film *for years*, further
demonstrating a complete waiver related to distribution of *Terrifier*.  FAC ¶¶ 33,
35.  Plaintiffs' allegations confirm her waiver of any privacy rights (to the extent
they ever existed), which is fatal to her revenge porn claim.

     ***Matter of Public Concern.***  Plaintiff argues that, while *Terrifier* may be of
public concern, the hacksaw scene is not, Opp. 16:12–17, even though it is "iconic"
and "enduring."  FAC ¶ 19.  But she cites zero authority for this proposition and, in
any event, ample case law recognizes the opposite.  *See Tamkin v. CBS Broad., Inc.*,
193 Cal. App. 4th 133, 143 (2011) (creation and broadcasting of television episode
were public issues); *Brodeur v. Atlas Ent., Inc.*, 248 Cal. App. 4th 665, 677 (2016)
(same for movie).  Contrary to Plaintiff's claims, the case for public interest in the
creation of horror films like *Terrifier* is particularly compelling given that they rely
upon novel prosthetics and special effects to *simulate* graphic and gory events.

     ***Circumstances With No Expectation of Privacy.***  Plaintiff asserts this safe
harbor does not apply because the hacksaw scene was filmed on a "closed set."
Opp. 16:21.  But closed or not, a film set for a commercial feature film, with cast
and crew present, is a "circumstance[] in which the person depicted had no
reasonable expectation of privacy."  Cal. Civ. Code § 1708.85(c)(5).

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 4.    The Revenge Porn Claim Is Time-Barred.

The two-year statute of limitations applicable to invasion of privacy claims bars Plaintiff's revenge porn claim. *See* MTD 12:13–19. Plaintiff argues the three-year limitations period for statutory claims applies, but in the very next breath characterizes her claim as an "invasion of privacy" to invoke the single-publication rule. Opp. 16:25–17:5 & n.9. She cannot have it both ways. If the claim sounds in privacy, the two-year limitations period applies. If it is purely statutory, the republication doctrine has no application, so her claim is untimely.

Plaintiff also misstates Defendants' argument. She claims Defendants "make no argument" that the statute of limitations bars claims based on the alleged still images. Opp. 17:17–19. That is false. *See* MTD 12:13–19 (arguing entire claim untimely). In any event, Plaintiff argues she can infer that the alleged photos were distributed because "numerous … images were taken." Opp. 11:24. But if the fact that an image was taken reasonably implies it is also distributed (it does not), then her revenge porn claim based on the photos accrued when they were taken—in 2015. Moreover, Plaintiff fails to allege any information about the distribution of these alleged still images *in the past two years*.

### 5.    The LMRA Preempts the Revenge Porn Claim.

Finally, Plaintiff's revenge porn claim is preempted by the LMRA because it depends on her interpretation of the SAG CBA's consent requirements related to scenes involving nudity. *See* MTD 12:20–13:7. Plaintiff concedes that the LMRA preempts claims that require interpreting a collective bargaining agreement, but asserts her claim survives because the SAG CBA is "only relevant" to whether she consented and reasonably expected *Terrifier* to remain private. Opp. 18:6–8. But her Opposition is littered with argument that Defendants' failure to comply with the SAG CBA's "informed written consent" clause establishes the non-consent and expectation of privacy elements of her revenge porn claim. *See, e.g.*, Opp. 8 n.1, 11 n.4, 13:10–13, 13 n.6, 13 n.7, 14:20–21, 18:6–8. LMRA preemption thus applies.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**B.      Plaintiff's Breach of Contract Claim Fails.**

      **1.      New York Law Applies.**

      New York law governs Plaintiff's contract claims under California's "most significant interest" test for contract claims.  *See* MTD 13:13–14:15.  Plaintiff does not dispute that the facts alleged support applying New York law under this test. *See id.* (applying test to claims here); Opp. 18 n.10.

      Plaintiff relies on *Urban v. Tesla*, 698 F. Supp. 3d 1124 (N.D. Cal. 2023), to argue that the Court cannot analyze choice of law on the pleadings.  Opp. 18 n.10. But *Urban* provides little guidance because it was not a contract case.  "The relevant contacts to be considered in a [contract] dispute" are found in Restatement Second of Conflict of Laws, § 188.  *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (1993).  Courts resolve this question at the pleadings stage.  *See Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1192 (S.D. Cal. 2007).  Plaintiff addresses facts irrelevant to the § 188 test, such as where Plaintiff experienced harm and where Defendants allegedly breached the agreement.  Opp. 18 n.10.  She cites no allegation supporting her claim that Defendants breached in California, *see id.*, or that the contract "is being performed in California."  *Id.* at 29. She concedes *Terrifier* was shot in New York and that Defendants are based in New York or New Jersey.  FAC ¶¶ 6–11, 26.  New York law applies.

      **2.      Plaintiff Alleges No Breach of the NDA.**

      Plaintiff does not allege a breach of the NDA because the royalty clause unambiguously limits her to "1% of profits from *Terrifier*"—the original film—not (a) sequels, (b) derivative works, or (c) merchandise.  *See* MTD 14:16–15:4.

      **a.      The Royalty Clause Excludes *Terrifier* Sequels.**

      First, the plain text and context of the royalty clause unambiguously exclude royalties from *Terrifier* sequels.  *See* MTD 15:5–18:15.

      ***Plain Text.***  The plain meaning of "Terrifier" is the movie titled *Terrifier*, not "*Terrifier* series."  *See id.* at 15:14–16:10.  When the contract was negotiated, was

the natural reading of "Terrifier" (a) the movie *Terrifier* or (b) intellectual property related to the movie *Terrifier*?  Plaintiff's characterization confirms that the only plausible reading is the former.  Plaintiff broadly responds that the term "Terrifier" is ambiguous because it "is at least reasonably susceptible" to meaning "the brand, franchise, cinematic universe, sequels, events and underlying intellectual property." Opp. 19:2–3, 19:22–20:1.  She cannot support her interpretation.

   She first says interpreting "Terrifier" to mean a franchise is "consistent with … entertainment industry" practice.  Opp. 19:10–11.  But she cites no authority for that assertion.  *See L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) ("A custom … must be so far established and so far known to the parties, that *it must be* supposed that their contract was made in reference to it.").  And industry practice is irrelevant because "Terrifier" is unambiguous.  *See id.*  Plus, the quotation marks around "Terrifier" conventionally denote the title of a specific work.  The AP Stylebook, Composition Titles (57th ed. 2024) ("Put quotation marks around the names of [movies].").

   Plaintiff next argues that interpreting "Terrifier" to mean the movie *Terrifier* adds limiting language to the NDA, Opp. 20:13–17, but she gets it backwards.  Her interpretation requires expanding a quoted film title into sequels, derivative works, and merchandise—obligations nowhere stated in the NDA.  *See* MTD 18:17–19:2.

   Plaintiff argues that the royalty clause should be interpreted against Defendants because Dark Age allegedly drafted the NDA.  Opp. 21:4–7.  But the *contra proferentem* doctrine she invokes "is used only as a matter of last resort, after all aids to construction have been employed but have failed to resolve the ambiguities." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n.2 (2d Cir. 1983).  The doctrine cannot apply here, where the term "Terrifier" is clear.  S*ee id.*

   In short, "disagreement about the 'plain meaning' of the words does not necessarily render those words ambiguous." *Rosenthal v. Quadriga Art, Inc.*, 69 A.D.3d 504, 506 (App. Div. 1st Dept, 2010) (Saxe, J., concurring).  Plaintiff's cited

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

cases agree that courts enforce a term's plain meaning at the pleading stage. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018) ("We begin by assuming contract terms have their 'plain, ordinary, popular or legal meaning.'"); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (noting dispute was "better suited for a Rule 12(b)(6) motion").

**Context.** The context of Plaintiff's agreement to perform in *Terrifier* also forecloses her claim to royalties from *Terrifier* sequels. *See* MTD 16:11–18:15.

*First*, Plaintiff and Dark Age contemporaneously used "Terrifier" to refer to the single movie in the Performer Agreement and ULB Producers Agreement. *See id.* at 16:19–18:2. Plaintiff's Opposition does not address the ULB Producers Agreement's reference to the "single motion picture … entitled 'TERRIFIER.'" And she asks the Court to ignore the Performer Agreement—which uses "Terrifier" to mean the "Production Title" of "the … photoplay"—arguing she merely signed the agreements at "roughly the same time" for "completely different purposes." Opp. 21:18–23. But she cannot argue her way out of her factual allegations which, as explained, *see* MTD 16 n.8, show the Performer Agreement and NDA are integrated because they were executed "concurrently" and that the NDA "further compensate[d] her for her work on" *Terrifier*. FAC ¶ 22. Even still, she concedes the agreements were linked: "[t]he entitlement to potential future royalties [in the NDA] … is why [she] agreed to work for such a low up-front rate [in the Performer Agreement]." Opp. 22:10–12. The Court should consider the parties' contemporaneous use of "Terrifier" to mean the movie *Terrifier* to rule the NDA unambiguously does not provide the royalties for which Plaintiff sues.

Plaintiff's remaining arguments regarding the parties' contemporaneous use of "Terrifier" miss the point. She points out that the NDA contains an integration clause, Opp. 22:4, but she does not address Defendants' explanation for why the integration clause still allows reading the NDA together with the contemporaneous Performer Agreement. *See* MTD 16–17 & n.8. Plaintiff also points out that the

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

NDA does not repeat the words "Production Title" as used in the Performer Agreement. Opp. 22:1–2. But the Performer Agreement is a form that includes that label by default; its significance here is that the parties identified the "production title" as "Terrifier," confirming their understanding of the term's meaning. *See* MTD 16:21–17:3. Finally, Plaintiff argues that "Terrifier" may have meant more than just the film *Terrifier* because "Defendants had already released a short film entitled *Terrifier*." Opp. 21:1–3. But she cites to an IMDb link for a film called *All Hallows Eve*. *Id.* This argument is not persuasive.

*Second*, Plaintiff's agreement covered five days' work at $100 per day. This modest scope, plus her subsequent execution of a "re-use" agreement, confirm the NDA did not include a perpetual grant of royalties from uncontemplated sequels. *See* MTD 18:3–10. Plaintiff misconstrues this argument as one about fairness. Opp. 22:6–9. But the question is what the NDA reasonably contemplated. Reading "Terrifier" to mean a movie franchise would not "effectuate [the agreement's] general purpose," *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005), which was limited to the production of a single ultra-low budget film. Plaintiff cites *Sanchez v. Valencia Holding Co., LLC*, but *Sanchez* addressed unconscionability, not contract interpretation. 61 Cal. 4th 899, 909–11 (2015). And *Vermont Teddy Bear Co. v. 538 Madison Realty Co.* cautions *against* implying material obligations the parties "neglected to specifically include," 1 N.Y.3d 470, 475 (2004)—e.g., reading franchise-wide royalties into a single sentence. *See* MTD 14:18–21.

The context of Plaintiff's agreement confirms what the NDA unambiguously states—Plaintiff is not entitled to royalties for any film other than *Terrifier*.

### b.     The Royalty Clause Excludes Derivative Works and Merchandise.

Defendants also established that Plaintiff's NDA claim fails because the royalty clause does not extend to a limitless catalog of future derivative works and *Terrifier* merchandise, which would have been contrary to the parties' reasonable

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

expectations. *See* MTD 18:16–19:2. Plaintiff responds that the parties' subsequent execution of the Merchandising Agreement "confirms" that the NDA already covered merchandise, Opp. 8–9 n.2—but this logic is backwards. As a matter of common sense, if the NDA already granted Plaintiff a right to merchandise profits, there would have been no need to negotiate the Merchandising Agreement. *See MAT Movies & TV Prods. GmbH & Co. Project IV KG v. RHI Ent. Distrib., LLC*, 752 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (reasoning arbitration provision did not govern where subsequent arbitration provision "would be superfluous").

**C.    Plaintiff's Remaining Claims Fail.**

**1.    No Breach of Implied Covenant.**

*First*, Plaintiff reiterates that sporadic payments and inscrutable memo lines are breaches of the implied covenant. Opp. 26:5–10. But the crux of her claim is still that Defendants interpreted the NDA differently than she did, and she seeks the same damages. This is not an implied covenant claim. MTD 19:25–20:28. *Second*, nor can Plaintiff invoke the implied covenant to create obligations that expand the parties' contract. MTD 20:11–28. Plaintiff does not dispute that her implied covenant claim does not support her claim for royalties from *Terrifier* sequels, derivative works, or merchandise unless her contract claim does.

**2.    No Money Had and Received.**

Plaintiff cannot maintain a money had and received claim because she alleges a contract between the parties. *See* MTD 21:1–9. Contrary to Plaintiff's assertion, *see* Opp. 27:16–18, Defendants agree that her compensation for *Terrifier* is governed by the Performer Agreement and NDA—they dispute only the *interpretation* of those agreements. *Detroit Tigers, Inc. v. Ignite Sports Media, LLC*, 203 F. Supp. 2d 789 (E.D. Mich. 2002), cited by Plaintiff, Opp. 27 n.21, permitted alternative pleading only where contract *formation* was disputed.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 3. Not Entitled to an Accounting.

Plaintiff is not entitled to an accounting because she alleges no fiduciary or confidential relationship, no entrustment of funds, and no absence of a legal remedy. *See* MTD 21:10–26. Plaintiff implicitly concedes she does not state a claim under New York law, instead arguing that California law should apply. Opp. 29:15–19. However, New York law applies, *see* § B.1, *supra*, so her claim fails.

### 4. No Promissory Fraud.

Plaintiff's promissory fraud claim fails because it repackages her contract claims. *See* MTD 22:1–23:4. Plaintiff responds that she pleads "a violation of a legal duty above and beyond" her contract, Opp. 23:20–21, but she identifies no collateral promise and concedes that the "misrepresentations are the terms of the NDA." Opp. 24:17–18; *see id.* at 23:18–20. And Plaintiff's demand for punitive damages does not transform a contract dispute into fraud. Opp. 23:22–23.

### 5. No UCL Claim.

*First*, out-of-state conduct is outside the UCL's reach. *See* MTD 23:10–14. Plaintiff contends some conduct occurred in California, Opp. 28:4–13, but no such conduct is alleged in the FAC. *Second*, the UCL claim is duplicative of the contract claim. *See* MTD 23:15–20. Plaintiff responds that "[t]he claim is not simply based on Defendants' breach of contract," Opp. 28:14–19, implicitly conceding the claim fails to the extent it is. *Third*, Plaintiff has an adequate legal remedy. *See* MTD 23:21–28. Plaintiff responds that "injunctive relief to prevent dissemination of the nude images" is "not otherwise available … on the other claims." Opp. 28:20–25. But that relief is available under her revenge porn claim. *Fourth*, the claim is time-barred. *See* MTD 24:1–4. Plaintiff concedes the claim is time-barred as to any conduct outside the limitations period. Opp. 28:26–29:5. *Fifth*, Plaintiff does not plead facts alleging unlawful, unfair, or fraudulent conduct. *See* MTD 24:5–11. Plaintiff cites 18 paragraphs in the FAC as showing "unfairness" and argues they should not be resolved on the pleadings. Opp. 29:6–11. Courts routinely dismiss

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

such amorphous UCL claims under the unfairness prong at the pleading stage. *See, e.g.*, *Hoffman v. Life Ins. Co. of the Sw.*, 740 F. Supp. 3d 918, 929 (N.D. Cal. 2024).

### 6.    No Invasion of Privacy Claim.

*First*, the LMRA preempts Plaintiff's invasion of privacy claim because the claim depends on her interpretation of the nudity provision in the SAG CBA. *See* MTD 24:12–25:10. Where Plaintiff's claims depend on SAG collective bargaining rules, she should have brought them in the SAG-designated forum. Plaintiff does not dispute this argument and therefore concedes it. *Second*, the privacy claim fails on the merits because Plaintiff's appearance in a commercial film is not a "private" fact, and distributing the film is not highly offensive. *See id.* Plaintiff analogizes to *Michaels*, 5 F. Supp. 2d at 840, but that case is involved a private sex tape never intended for public distribution. *Id.* The court expressly distinguished the plaintiff's "real sex life" from her "roles" as a "professional actor." *Id.*

### D.    No Leave to Amend.

Leave to amend should be denied. Plaintiff has already amended once following a conferral with Defendants about the matters raised in this motion and still failed to cure those defects in the FAC. Where a plaintiff has previously amended, courts have "particularly broad" discretion to deny further leave. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Plaintiff also offers no indication of how amendment could cure these defects. *See Patterson v. Am. Woodmark Corp.*, 2020 WL 7222808, at *4 (C.D. Cal. Sept. 15, 2020). Further amendment would be futile, so the Court should dismiss with prejudice. *See Hammett v. Sherman*, 2022 WL 4793495, at *7 (S.D. Cal. Sept. 30, 2022).

### III.    CONCLUSION

Defendants respectfully submit that their Motion should be granted.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: February 27, 2026

DAVIS WRIGHT TREMAINE LLP
ALEXANDER F. PORTER
NICOLE S. PHILLIS
SANCHO ACCORSI
FELIX MURPHET


By:  s/ Nicole S. Phillis
　　　　　　Nicole S. Phillis
Attorneys for Defendants
DARK AGE CINEMA, LLC; ART
THE CLOWN, LLC; FUZZ ON THE
LENS PRODUCTIONS, LLC; PHIL
FALCONE; DAMIEN LEONE

16

REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT